SCHAEFER, Plaintiff-Respondent, v. DUDARENKE, d/b/a
St. Kilian Cheese Factory, Defendant-Appellant:
HILLER, Defendant.

Supreme Court

No. 76–717. Submitted on briefs May 2, 1979.—Decided May 30, 1979.

(Also reported in 278 N.W.2d 844.)

For the appellant the cause was submitted on the briefs of *William J. Hickmann, Elaine A. Shanebrook* and *Schloemer, Schlaefer, Alderson, Hickmann, Seefeldt & Spella, S. C.,* of West Bend.

For the respondent the cause was submitted on the brief of *Thomas O'Meara, Jr.* and *O'Meara, O'Meara & Eckert* of West Bend.

CONNOR T. HANSEN, J. David Schaefer owned a hauling route for transporting milk from producers to the St. Kilian Cheese Factory. When Schaefer purchased the route in 1965, the producers were paying 10 cents per cwt. for having their milk hauled to the factory, and the factory was paying an additional 10 cents per cwt. for the hauling. The parties stipulated that Schaefer was an independent contractor. As is the custom in the trade, the factory would deduct the producers' share of 10 cents per cwt. from the producers' milk checks. The factory would then remit the producers' share to Schaefer along with its own 10 cents per cwt. payment. These agreements were oral.

Hauling rate adjustments in charges made to the producers are accomplished pursuant to Wisconsin Administrative Code Ag 126.02 which requires the factory to notify the producer and the State Department of Agriculture of hauling rate changes. Over the years, Schaefer had made several upward rate adjustments by first contacting the producers and then having appellant notify the department pursuant to the provision of Ag 126.02.

The present controversy arose as a result of a rate increase of three cents per cwt. initiated by the appellant in December of 1973, without the knowledge or consent of Schaefer. This rate increase was paid by the producers and retained by appellant. The effect of the appellant's handling this three cents per cwt. hauling rate increase in this manner was to reduce the hauling charge paid by appellant from 10 cents per cwt. to seven cents per cwt. Schaefer learned of this increase from one of his drivers when he told the driver he was contemplating a rate increase.

Schaefer testified that he assumed the rate increase would be reflected in his January, 1974, check. It was not. During January, February and early March, 1974, there were contacts between employees for the hauler

and the factory as to why the rate increase was not reflected in payments for hauling made by appellant to Schaefer. On March 18, 1974, Schaefer called Dudarenke to find out why he had not been paid the increase. He said Dudarenke told him the 3 cent increase was needed to cover legal fees incurred in an action involving spilled milk.[1] Schaefer said he demanded that Dudarenke pay him the increase and that Dudarenke refused.

Dudarenke, who at the time of the trial was sole owner of the factory, testified that beginning in January, 1974, he deducted the three cents per cwt. hauling rate increase from each producer's check but did not remit it to Schaefer. He said he never notified Schaefer that he was reducing the factory payment for hauling from 10 cents per cwt. to seven cents per cwt. Dudarenke took the position that the factory was not reducing its agreed payment of 10 cents per cwt. to Schaefer. He testified Schaefer did not request a rate increase and that the three cents per cwt. increase was initiated by the factory. He said when Schaefer called about the increase he explained that it was needed to cover increased expenses and legal fees and that it would be best if Schaefer quit the route. He further testified the producers were notified of the three cents per cwt. increase as required by the department of agriculture regulations but were not told that the increase was to be used to reduce the amount the factory was actually paying to Schaefer for hauling.

Among the witnesses who testified were Edmund M. Kraemer and Richard Bassuener.

Kraemer, an inspector for the State Department of Agriculture, testified that Ag 126.02 only required the factory to notify the producer and the department of any hauling rate changes. He said this rate was what the

---

[1] The parties were apparently involved in a separate action involving an incident in which Schaefer is alleged to have spilled some milk.

producer was being charged to have his milk hauled and did not include the factory's operating costs. He said there was no requirement that the factory disclose what contribution it had privately agreed to pay the hauler.

Bassuener, an accountant for five cheese factories, testified that the agreement between a factory and a hauler generally involved the factory deducting the hauling rate from the producers' checks and paying this deduction to the hauler along with a subsidy.

The trial court found that the factory had, without notice to Schaefer, increased the hauling rate by three cents per cwt., but continued to pay Schaefer on the basis of the previously established hauling rate and continued the 10 cents per cwt. payment from the factory. The court also found that Dudarenke told Schaefer the increase was needed to cover legal fees and expenses incurred in the alleged spillage incident. The court concluded that the factory used the increase as a means of reimbursing the loss from the alleged milk spillage incident but did not inform the producers of this purpose. The court also found that the factory did not inform Schaefer that it was reducing its contribution.

The trial court concluded that the factory was purchasing milk from the producers but that Schaefer had contracted separately with the producers for the hauling charges. He concluded that the factory had agreed to act as agent for Schaefer in collecting the hauling fees by deducting them from the producers' checks and remitting them to Schaefer. The court concluded that the factory had separately agreed to pay Schaefer 10 cents per cwt. for hauling milk to its factory. The trial court then determined that the factory was acting as Schaefer's agent when it increased the hauling rate by three cents per cwt. but failed to remit this increase to Schaefer. It further concluded that this increase did not relieve the factory of its separate obligation to pay Schaefer 10

cents per cwt. The trial court ultimately concluded that appellant had contracted to pay Schaefer 10 cents per cwt. for hauling milk to the factory and that the appellant had unilaterally attempted to modify the terms of the contract between appellant and Schaefer. The trial court granted judgment to Schaefer in the amount the appellant had been paid by the producers and withheld.

A number of issues are raised on appeal; however, we consider the two significant issues to be: (1) Whether the trial court erred in finding that an agency relationship existed between the parties insofar as the three cents per cwt. hauling rate increase is concerned, and (2) whether the trial court erred in finding that the course of conduct of the parties established a contract between the appellant and Schaefer as to payments of hauling rate increases.

The trial court found that the factory acted as Schaefer's agent for the collection of the hauling fee and concluded that it was acting as Schaefer's agent in increasing the rate. Appellant contends that this finding is contrary to the stipulation that Schaefer was an independent contractor. Appellant explains that the factory acted as an agent only for the collection of the fee which Schaefer, as an independent contractor, separately agreed on with the producers. Appellant said the factory was not acting on Schaefer's behalf when it increased the rate.

Appellant is correct in saying that no express agency existed here regarding the increase. Schaefer testified that he did not ask the factory to increase the rate in December, 1973. Appellant does not cite any authority to support its statement that the fact that Schaefer was an independent contractor precludes the existence of an implied agency. Implied or apparent agency is established by proving: (1) Acts by the agent or principal justifying

belief in the agency; (2) knowledge thereof by the party sought to be held; (3) reliance thereon by the plaintiff, consistent with ordinary care and prudence. *Larkin v. Johnson,* 67 Wis.2d 451, 457, 227 N.W.2d 90 (1975); *Iowa National Mut. Ins. Co. v. Backens,* 51 Wis.2d 26, 34, 186 N.W.2d 196 (1971). These cases cited involve situations in which a third party is attempting to make claim against the purported principal based on actions or representations of the purported agent. However the existence of apparent agency can also affect rights between the purported principal and agent. The Restatement (Second) of *Agency* 2d (1958), contains the following rules:

"*§319. General Rule*
"Where a purported servant or other agent has entered into a transaction with a third person, its ratification by the purported master or other principal has the same effect upon the liabilities of the third person to the principal as an original authorization."

"*§408. Liability Created by Principal's Ratification*
"The ratification of the act of a purported agent subjects him to liability to account to the person for whom he intended or purported to act for profits made by him to which the purported principal would have been entitled if the act had been authorized."

"*§430. Purported Agents*
"One who, without the consent or manifestation of consent of another, purports to act as the agent for such other is subject to liability for loss occasioned to the other by such conduct or for the value of anything belonging to the purported principal which he has improperly used. If the other ratifies, the liability of the purported agent to the other is the same as if he originally had been an agent who had acted without authority and whose conduct the principal ratified."

In the instant case the factory's actions were limited to notifying the producers that the hauling rate had been

increased and then deducting the higher rate. These were the same actions the factory had performed on two previous occasions when Schaefer had requested an increase. Schaefer, his mother, who was doing his bookkeeping and who initially requested payment of the three cents per cwt. from the factory, and Schaefer's driver, all assumed the increase had been made on his behalf. The practice in the milk hauling business was such that the producers would assume that Schaefer's hauling rate had been increased. The factory did nothing to dispel this impression. The trial court's conclusion that even though the factory had not acted on Schaefer's express authorization it had acted as Schaefer's agent was not in error.

In arriving at its conclusions the trial court gave consideration to secs. 401.201, 401.205 and 402.208, Stats. (Uniform Commercial Code). We are of the opinion that in deciding the instant case it was inappropriate and unnecessary for the trial court to attempt to bring this case within the provisions of the Uniform Commercial Code. However, we conclude that the fact that the trial court did consider these provisions of the Uniform Commercial Code does not mandate a reversal.

Appellant also contends that Schaefer has no right to the rate increase because that increase was a contract between the factory and the producers to which Schaefer was not a party. The agreement between Schaefer and the appellant concerned only the payment of 10 cents per cwt. by the appellant and the deduction and remittance of the previously established and authorized hauling charges. This agreement, appellant argues, did not involve the three cent per cwt. hauling rate increase it effected. Appellant explains that a course of dealings involving rate increases initiated by Schaefer cannot be used to imply that a rate increase initiated by the factory was made for the benefit of Schaefer. On this appeal the

appellant now contends that the factory has not reduced its contribution to the hauling costs, that it is still paying Schaefer 10 cents per cwt., and that it is only seeking reimbursement from the producers for a portion of that cost. Appellant explains his trial testimony concerning the reduction of actual hauling costs to the factory as a matter of semantics and says that the factory is paying the same amount only its cost is less now.

However, the legal effect is the same whether the factory had unilaterally modified its original agreement to pay Schaefer 10 cents per cwt. by actually reducing the amount it paid Schaefer or by unilaterally increasing the hauling rates to producers so that the factory could make three cents per cwt. off the labor of Schaefer.

Appellant does not deny that the factory agreed to pay Schaefer 10 cents per cwt. over and above the producers' contribution as compensation for hauling milk to it. It is undisputed that a party to a contract cannot unilaterally modify its terms without the other party's assent. *See, e.g., Nelsen v. Farmers Mut. Automobile Ins. Co.,* 4 Wis.2d 36, 90 N.W.2d 123 (1958) ; *Thomsen v. Olson,* 219 Wis. 145, 262 N.W. 601 (1935). Until Schaefer agrees to haul milk to appellant's factory for 7 cents per cwt. the factory is obliged to pay Schaefer 10 cents per cwt.

If appellant were permitted to reduce the factory's hauling costs by 3 cents per cwt. in this manner, it would also be able to reduce it by 10 cents per cwt. and shift the entire cost to the producers. Where the industry practice is to have the factory deduct the hauling costs from the producers' checks, the producers, in the absence of information to the contrary, necessarily assume the increased rate has been initiated by the hauler. The Department of Agriculture Regulation, AG 126.01 (2), defines hauling rates to mean:

". . . all amounts and factors that are the basis for computation of the milk hauling charges that are deducted from amounts due producers for milk and shall include without limitation basic charge per unit of quantity, stop charges, maximum or minimum charges per delivery period, differentials due to quantity, farm location or distance from plant, frequency of pickup or any other factor which enters into such computation."

The notice increasing the hauling rates required by the regulation which appellant sent to the producers and which Schaefer knew nothing about, said only:

"Milk Hauling Rates for St. Kilian Cheese Factory
"We report the following rates, as required by the Wisconsin Department of Agriculture regulation Ag. #126.
"$ .15 per hundred lbs. of milk
"$ .15 stop charge."

Clearly money deducted under these regulations can only be used for hauling costs. If appellant did not unilaterally reduce its agreed-upon contribution then it made a 3 cent per cwt. profit off of Schaefer's hauling which was available for other purposes. Such an action could adversely affect Schaefer's relationship with the producers and would certainly affect the extent to which Schaefer could further raise his hauling rates.

Appellant indicates that Schaefer has absolute control over his hauling rates, conceding that the factory could not prevent Schaefer from obtaining an increase from the producers. Appellant does not explain where it got the authority to increase the hauling rates. Trade usage can be used to give meaning to and interpret contracts even though they are not governed by the Uniform Commercial Code. The Restatement of Contracts (1932), provides:

"§247. WHEN USAGE IS OPERATIVE UPON PARTIES.

"A usage is operative upon parties to a transaction where and only where

". . .

"(b) either party intends the effect of his words or other acts to be governed by the usage, and the other party knows or has reason to know this intention, or

"(c) the usage exists in such transactions and each party knows of the usage or it is generally known by persons under similar circumstances, unless either party knows or has reason to know that the other party has an intention inconsistent with the usage."

and

"§248. WHERE BOTH PARTIES ARE OF THE SAME PLACE OR OCCUPATION OR GROUP.

". . .

"(2) Where both parties to a transaction are engaged in the same occupation, or belong to the same group of persons, the usages of that occupation or group are operative, unless one of the parties knows or has reason to know that the other party has an inconsistent intention."

Expert testimony here showed that the usual practice in milk hauling agreements was for the hauler to negotiate rates separately with the producers and the factory and to have the factory deduct the producers' contribution and remit the entire deduction to the hauler. Schaefer's agreement with the factory was a simple contract entered into in the context of this trade practice. Neither he nor the producers had any reason to believe it would not be adhered to. By raising the hauling rate and not remitting the increase appellant breached its contract with Schaefer. Further, appellant did not enter into a separate agreement with the producers to increase their rate in order to reduce the factory's payment to Schaefer. All appellant did was notify the producers that their deduction would be larger, leaving the reasonable inference that Schaefer's hauling rates had been increased. Under these circumstances appellant cannot be permitted

to retain the benefit it received through breaching its contract with Schaefer.

The appellant also argues that a new trial should be granted because the trial court failed to file its decision within 60 days as required by sec. 805.17(2), Stats.[2] and that Schaefer either waived his right to damages or failed to mitigate damages. We have considered these arguments and do not find them persuasive.

The judgment and order of the trial court are affirmed.

*By the Court.*—Judgment and order affirmed.

[2] *See: Merkley v. Schramm,* 31 Wis.2d 134, 142 N.W.2d 173 (1966).