Clarence C. PAMPERIN and Doris M. Pamperin,
Claimants-Appellants-Petitioners,

v.

TRINITY MEMORIAL HOSPITAL and St. Paul
Fire & Marine Insurance Company,
Defendants-Respondents,

Ronald E. SCHULGIT, M.D., and CNA Insurance
Company and Wisconsin Patients
Compensation Fund, Defendants.

Supreme Court

*No. 87–0029. Argued January 5, 1988.—Decided May 31, 1988.*

(Also reported in 423 N.W.2d 848.)

189

190

For the claimants-appellants-petitioners there were briefs by *Ted M. Warshafsky, Victor C. Harding* and *Warshafsky, Rotter, Tarnoff, Gesler, Reinhardt & Bloch, S.C.,* Milwaukee, and oral argument by *Victor C. Harding.*

For the defendants-respondents there was a brief by *Samuel J. Leib* and *Blumenthal, Jacquart, Wilke & Blumenthal,* Milwaukee, and oral argument by *Samuel J. Leib.*

Amicus Curiae brief was filed by *D. James Weis* of *Johnson, Weis, Paulson & Priebe, S.C.,* for the Wisconsin Academy of Trial Lawyers.

WILLIAM G. CALLOW, J. This is a review of an unpublished decision of the court of appeals which affirmed an order of the circuit court for Milwaukee county, Judge Robert W. Landry, dismissing Trinity Memorial Hospital and St. Paul Fire & Marine Insurance Company from a medical malpractice action brought by Clarence and Doris Pamperin.

This case involves an action by Clarence and Doris Pamperin to recover damages from Trinity Memorial Hospital (Trinity) for the alleged negligence arising out of the care and treatment provided to Clarence Pamperin (Pamperin) following his admission to Trinity's emergency room. In seeking to impose liability, Pamperin argues that Trinity should be liable for the negligence of a radiologist, practicing medicine at Trinity, under one of the following

theories: (1) respondeat superior, (2) apparent authority, or (3) nondelegable duty.

The case before us concerns the admission of an injured person to a hospital emergency room for treatment when the admission of the patient was not at the direction of a personal attending physician. We are not called upon to determine the liability of the hospital when the hospital services are conducted under the supervision of the patient's personal physician and, therefore, do not address that question.

Under facts such as we have in this case, we conclude that when a hospital holds itself out to the public as providing complete medical care, a hospital can be held liable under the doctrine of apparent authority for the negligent acts of the physicians retained by the hospital to provide emergency room care, irrespective of the fact that the person who committed the negligent act was an independent contractor. By holding themselves out as providing complete care, hospitals have created the appearance that the hospital itself, through its agents or employees, treats emergency room patients. When a hospital does not inform incoming patients which, if any, care or service is provided by independent contractors, and not by employees or agents, a patient should be able to look to the hospital for the negligence of the physician retained by the hospital to provide medical care. Moreover, because complete medical care consists of both direct care and support services, liability should attach regardless of whether the physician who is negligent is treating the patient directly or assisting in treating the patient by providing support services invisible to the patient.

We therefore hold that Trinity can be held liable under the doctrine of apparent authority for the

negligence of its physicians who provide care incident to the admission of a patient to an emergency room, irrespective of the fact that the specific physician who committed the negligent act was an independent contractor. Accordingly, we reverse the decision of the court of appeals.

Because this case comes to us following motions for summary judgment, the facts before us on review are limited. In essence, they are that on January 3, 1982, Pamperin fell and injured his leg. He was thereafter taken to the emergency room at Trinity where he was examined by Dr. Ronald Schulgit (Schulgit).[1] During the examination, Schulgit requested X-rays be taken of Pamperin's lower right leg. Schulgit read the X-ray, determined there was a minor ankle fracture, splinted the fracture, and then sent Pamperin home.

The next day the X-rays were read at Trinity by Dr. Boex (Boex), a radiologist. Boex also determined there was a minor ankle fracture. However, both Boex and Schulgit failed to observe that the X-rays also revealed a comminuted fracture of the proximal tibia at the knee.

The deposition of Boex indicates that, at the time Boex read the X-rays, he was an employee of Lakeview Radiologists, S.C. (Lakeview). According to Boex, Lakeview is a service corporation which contracted with Trinity to provide diagnostic radiology for Trinity. Under the terms of the contract, Lakeview is to provide twenty-four hour radiological services. Trinity is to provide the physical facilities, equipment, and

[1]The record does not reveal whether Pamperin affirmatively chose to go to Trinity. The record does indicate, however, that Pamperin was familiar with Trinity prior to his admission on January 3, 1982.

staff. Although Lakeview is, under the contract, prohibited from engaging in any activity which will impair its ability to provide adequate radiological services, Lakeview is not prohibited from maintaining a separate practice. However, according to Boex, Lakeview provides radiological services only to Trinity.

Pamperin initially commenced this action before the Patient Compensation Panel (Panel). Prior to the Panel hearing, Pamperin filed a motion for summary judgment seeking to have the alleged negligence of Boex imputed to Trinity under the theories of apparent/ostensible agency, nondelegable duty, or respondeat superior. Trinity filed a brief in opposition to Pamperin's motion and filed a counter motion requesting the Panel to declare that, as a matter of law, Boex's negligence could not be imputed to Trinity. The Panel subsequently denied Pamperin's motion seeking to have Boex's negligence imputed to Trinity and held Trinity's motion in abeyance pending the Panel hearing.

In denying Pamperin's motion, the Panel first addressed the applicability of the doctrine of apparent authority. According to the Panel, the doctrine of apparent authority is founded in contract and is intended to protect an individual who relies upon the acts of someone who appears to be an agent of the principal sought to be held liable. After noting it was probable that Pamperin had not realized anyone besides Schulgit would read the X-rays, the Panel concluded that Pamperin failed to establish reliance sufficient to invoke the doctrine of apparent authority.

The Panel next rejected Pamperin's argument that liability should attach under the theory of

respondeat superior. According to the Panel, Boex's employer, Lakeview, was an independent contractor. Thus Boex himself was never an employee of Trinity. Because the doctrine of respondeat superior is dependent upon an employee-employer relationship, the Panel concluded Trinity was not liable under this doctrine. The Panel also rejected Pamperin's argument that liability could be imputed under the theory of nondelegable duty. According to the Panel, because the work involved was not ultrahazardous and because no public policy grounds existed for making the provision of radiological services nondelegable, Trinity was not liable under the nondelegable duty theory.

At the conclusion of Pamperin's case, Trinity filed a motion for nonsuit/dismissal alleging that Pamperin had failed to prove any negligence by Trinity. Based upon its conclusion that Pamperin had failed to establish a prima facie case that Trinity itself was negligent, the Panel granted Trinity's motion for dismissal.

On May 27, 1986, Pamperin commenced a de novo action in the circuit court against Trinity and Schulgit. The insurers of Trinity and Schulgit, St. Paul Fire & Marine Insurance Company (St. Paul) and CNA Insurance Company (CNA) respectively, were added as defendants in June of 1986. In the complaint, Pamperin alleged that Trinity and Schulgit were negligent in the care and treatment rendered to Clarence Pamperin. Pamperin again moved for summary judgment requesting an order that Trinity was vicariously liable for the negligence of Boex.

In the brief in support of the motion, Pamperin advanced three separate theories for holding Trinity liable for Boex's negligence: (1) Boex was a servant of Trinity, and therefore Trinity is liable under the

theory of respondeat superior; (2) Trinity has a nondelegable duty to provide a radiologist for its patients and is therefore estopped from denying liability; or (3) Trinity created an apparent or ostensible agency for its radiologists and is thus liable for the negligence of Boex. Trinity and St. Paul also filed a motion for summary judgment requesting an order dismissing them from the action or, in the alternative, a finding that they are not liable for the acts or omissions of Boex or Lakeview.

On October 27, 1986, the circuit court issued a decision granting summary judgment dismissing the malpractice action against Trinity and St. Paul. In reaching this conclusion, the court first held that Boex was an independent contractor. Next, the court noted that, in this case, because there was no allegation that Trinity was negligent in failing to check the credentials of Lakeview, whether the hospital was liable was "a question of agency." However, because the only type of agency relationship which would impose liability was a master-servant agency relationship, Trinity could not be liable for the acts of Boex, an independent contractor. The court further concluded that, although a hospital might owe a duty to one who relies upon an agency relationship, there was no liability in the present case because there was no evidence that Pamperin relied upon Boex's examination of the X-rays.

Pamperin appealed the order[2] of the circuit court, and the court of appeals affirmed the circuit court's order. The court of appeals rejected Pamperin's argument that *Johnson v. Misericordia Community Hospi-*

[2]We note there is no judgment of dismissal in the record. The appeal has proceeded on an order granting the motion.

*tal,* 99 Wis. 2d 708, 301 N.W.2d 156 (1981), supported extending the liability of hospitals to include the negligence of an independent contractor physician under an apparent/ostensible agency theory. According to the court, *Misericordia* was limited to a situation in which a hospital was negligent in selecting its medical staff. The court also rejected Pamperin's argument that Trinity had a nondelegable duty to provide radiological services. Contrary to the assertions of Pamperin, the court concluded that the Wisconsin Administrative Code sec. H 24.10(1)(c)1 did not create a nondelegable duty.

On August 18, 1987, we accepted Pamperin's petition for review.

We begin our review by considering Pamperin's assertion that Trinity is responsible for the negligence of Boex under the doctrine of respondeat superior. Essentially, Pamperin contends that Trinity has substantial control over Lakeview and that because of Trinity's retention of control over Lakeview, Boex—as an employee of Lakeview—is a servant of Trinity. For the reasons listed below, we conclude that the doctrine of respondeat superior does not apply in the present case.

Under the doctrine of respondeat superior, a master is subject to liability for the tortious acts of his or her servant.[3] A servant is one who is "'employed to perform service for another in his affairs and who, with respect to his *physical conduct* in the performance of the service, is subject to the other's control

---

[3]The act for which liability is sought to be imposed must also be committed while the servant is acting in the scope of employment. *Scott v. Min-Aqua Bats Water Ski Club,* 79 Wis. 2d 316, 320, 255 N.W.2d 536 (1977).

or right to control.'" *Arsand v. City of Franklin,* 83 Wis. 2d 40, 45–46, 264 N.W.2d 579 (1978) (emphasis in original). The right to control is the dominant test in determining whether an individual is a servant. However, other factors are considered, including the place of work, the time of the employment, the method of payment, the nature of the business or occupation, which party furnishes the instrumentalities or tools, the intent of the parties to the contract, and the right of summary discharge of employees.[4] *Thurn v. La*

---

[4]The comment to Wis. J I—Civil 4030 which defines servant notes these factors listed and also references Restatement (Second) of Agency sec. 220 (1958). In sec. 220 of the Restatement a servant is defined as:

"(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

"(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b) whether or not the one employed is engaged in a distinct occupation or business;

"(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) the skill required in the particular occupation;

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f) the length of time for which the person is employed;

"(g) the method of payment, whether by the time or by the job;

"(h) whether or not the work is a part of the regular business of the employer;

"(i) whether or not the parties believe they are creating the relation of master and servant; and

*Crosse Liquor Co.,* 258 Wis. 448, 451, 46 N.W.2d 212 (1951); *See Bond v. Harrel,* 13 Wis. 2d 369, 374, 108 N.W.2d 552 (1961).

■ In the present case, the facts indicate that Boex is not a servant of Trinity. Looking first at the element of control, we conclude that Trinity does not exercise any control over the manner in which Lakeview's radiological services are provided. The very nature of a radiologist's function requires the exercise of independent professional judgment. Accordingly, a hospital is not in a position to, and generally does not, exercise control over a radiologist's performance of his or her professional activities. Although Trinity does require that the Lakeview radiologists be members of Trinity's staff, and although Trinity retains a limited ability to monitor the quality of the case which Lakeview provides, Trinity does not reserve the right of control over the specific techniques employed by the Lakeview radiologist. *Cf. Reynolds v. Swigert,* 102 N.M. 504, 507, 697 P.2d 504 (Ct. App. 1984) (contract between hospital and physician provided that the hospital "retains the right to exercise control over all details of the professional work performed by the Physician in the hospital's emergency room").

■ In addition to the limited control by Trinity over Lakeview, the contract between Lakeview and Trinity provides that Lakeview is an independent contractor. Specifically, the contract states that at all times Lakeview "shall act as an independent contractor, practicing the profession of medicine specializing in Diagnostic Radiology through its qualified profession-

---

"(j) whether the principal is or is not in business."

al employees. [Trinity] shall neither have nor exercise any control or direction over the methods and practices of [Lakeview's] specialty or have any control or direction over the professional employees of [Lakeview] except as may be specifically set forth under this agreement." Although not dispositive of the parties relationship, the contract evidences an intent by the parties not to create a master-servant relationship.

Other factors also indicate that Lakeview is not Trinity's servant. Lakeview and Trinity maintain separate offices. Each is responsible for billing and collecting for the costs associated with the particular service each provides. Consistent with this responsibility, Lakeview has final authority in establishing its fees. In addition, Lakeview is required to provide its own malpractice insurance. Finally, Lakeview is not prohibited from serving other hospitals or patients.

The factors listed by Pamperin, including Trinity's right to request review of Lakeview's performance, Trinity's ability to review procedures adopted by Lakeview, its power to approve Lakeview's appointment of a director of the radiology department, as well as the requirement that the Lakeview radiologists be members of Trinity's staff, do not compel the conclusion that Lakeview is Trinity's servant. A number of these factors focus on maintaining professional standards; they do not indicate that a master-servant relationship exists. Other factors noted by Pamperin, particularly the requirement that the Lakeview radiologists be members of Trinity's staff and subject to the hospital's approval, are imposed by statute. Sec. 448.08(5), Stats. In addition, factors which indicate a master-servant relationship, e.g., a fixed monthly salary and withholding of taxes and social security,

are not present in this case. The limited control which Trinity has reserved over Lakeview's providing radiological services does not transform Lakeview's relationship with Trinity into a master-servant relationship. Under the facts of this case, we hold, as a matter of law, that Lakeview—and thus Boex—is not Trinity's servant, i.e., Lakeview is an independent contractor. Accordingly, we conclude that the doctrine of respondeat superior is not applicable in the present case.

We turn next to Pamperin's assertion that Trinity should be liable for Boex's acts under the doctrine of apparent authority.[5] According to Pamperin, hospitals—by holding themselves out as the providers of complete medical care—should be held liable for the acts of physicians who are employees of, or appear to be employees of, the hospital. Trinity, on the other hand, argues that a hospital's liability should be limited to that stemming from negligence in selecting a physician and from the negligence of a physician who is an employee of the hospital. According to Trinity, to impose liability when the treating physician is not a servant and the hospital has not been negligent in selecting the physician would make a hospital liable for all acts of negligence occurring within the "four walls" of the hospital. We conclude, for the reasons listed below, that Trinity as a provider of emergency room care can be held liable for the negligence of those who provide care incident to the admission of a patient in an emergency room, irre-

---

[5]Pamperin, in arguing that liability should be imposed, refers to the doctrine under which liability is sought as apparent/ostensible agency. To be consistent with our prior cases imposing liability under this doctrine, we shall refer to the theory of liability as apparent authority.

spective of the fact that the person who committed the negligent act was an independent contractor. Consistent with this conclusion, Trinity can be held liable regardless of whether the physician who is negligent treats the patient directly or merely assists in treating the patient by providing support services.

Under apparent authority, a principal may be held liable for the acts of one who reasonably appears to a third person, through acts by the principal or acts by the agent if the principal had knowledge of those acts and acquiesced in them, to be authorized to act as an agent for the principal. We have previously recognized that liability may attach under the doctrine of apparent authority. *Schaefer v. Dudarenke,* 89 Wis. 2d 483, 489–90, 278 N.W.2d 844 (1979). For liability to exist, three elements must be present: "(1) Acts by the agent or principal justifying belief in the agency; (2) knowledge thereof by the party sought to be held; (3) reliance thereon by the plaintiff, consistent with ordinary care and prudence." *Id.*

Although we have recognized the doctrine of apparent authority in other contexts, this is the first time we have been called upon to apply this doctrine to impose liability on a hospital for the negligence of hospital physicians who are independent contractors. Other jurisdictions, however, have imposed liability under apparent authority upon hospitals for the negligence of physicians who are independent contractors. *E.g., Paintsville Hospital Co. v. Rose,* 683 S.W.2d 255, 258 (Ky. 1985); *Arthur v. St. Peters Hospital,* 169 N.J. Super. 575, 581, 405 A.2d 443 (1979); *Grewe v. Mt. Clemens Hospital,* 404 Mich. 240, 250–51, 273 N.W.2d 429 (1978).

The courts adopting apparent authority have noted a number of reasons why the doctrine of apparent authority should be applied to suits against hospitals. In *Hardy v. Brantley,* 471 So. 2d 358, 371 (Miss. 1985), the court held that a hospital may be liable under apparent authority for the negligence of an emergency room doctor who failed to properly diagnose and treat a patient who came to the emergency room for treatment of severe abdominal pain. The court reasoned that hospitals were no longer the providers solely of the physical facilities where physicians practice their professions. According to the court, hospitals hold themselves out to the public as offering and rendering quality health care services. In so doing, they act through persons whose services are engaged by the hospitals. Because the hospitals stood to profit from the acts of those hired to provide medical care, the court concluded that it would be anomalous for the hospitals to escape liability if those same individuals delivered care below minimally acceptable standards.

The court further stressed that "patients often seek emergency care and treatment from the hospital, not from any particular physician. The patient entering the hospital emergency room seldom knows the name of the physician who will treat him." *Id.* Accordingly, the court concluded that, where the hospital holds itself out as the provider of care and the patient looks to the hospital for care and treatment, the hospital should be estopped from denying responsibility. *Id.*

The New Jersey Superior Court, in holding that a hospital may be liable for the negligence of physicians providing emergency room treatment, noted that imposing liability was particularly appropriate when

examined in terms of the reasonable expectations of the public. *Arthur,* 169 N.J. Super. at 583. According to the court, "generally people who seek medical help through the emergency room facilities of modern-day hospitals are unaware of the status of the various professionals working there. Absent a situation where the patient is directed by his own physician or where the patient makes an independent selection as to which physicians he will use while there, it is the reputation of the hospital itself upon which he would rely." *Id.* (Footnote omitted.)

Similarly, in *Paintsville,* the court looked at the perceptions of the patients in deciding whether to apply the doctrine of apparent authority to lawsuits against hospitals. After noting that patients in emergency rooms are generally unaware of the employment status of the various professionals working in an emergency room, the court concluded that "it is unreasonable to put a duty on the patient to inquire of each person who treats him whether he is an employee or independent contractor of the hospital." *Paintsville,* 683 S.W.2d at 258. Accordingly, the court held that apparent authority could be used to hold a hospital liable for the negligence of its emergency room personnel. *Id.*

We further note that those courts imposing liability have frequently looked to two sections of the Restatements—Restatement (Second) of Torts sec. 429 (1965), and Restatement (Second) of Agency sec. 267 (1958). Under sec. 429 "[o]ne who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such ser-

vices, to the same extent as though the employer were supplying them himself or by his servants." Furthermore, sec. 267 provides, "[o]ne who represents that, another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such." Relying upon either or both of these sections, courts have held that where an individual enters a hospital and receives care from a physician who is an independent contractor, liability may be imposed on the hospital if the individual receiving care has reasonably relied upon the hospital's representation that the treating physician was the servant or agent of the hospital. *E.g., Mehlman v. Powell,* 281 Md. 269, 273–75, 378 A.2d 1121 (1977) (citing Restatement sec. 267); *Capan v. Divine Providence Hospital,* 287 Pa. Super. 364, 370–71, 430 A.2d 647 (1980) (citing Restatement sec. 429).

Having previously recognized the doctrine of apparent authority in other contexts, we agree with the decisions from other jurisdictions that the doctrine of apparent authority should also be available in suits brought against hospitals for a physician's negligence in providing emergency room care.[6] As we noted in *Misericordia:*

> "The concept that a hospital does not undertake to treat patients, does not undertake to act through

---

[6]Trinity also argues that the doctrine of apparent authority is inapplicable except in contract cases. However, we have recognized previously that under sec. 429 of the Restatement (Second) of Torts (1965), tort liability can be imposed on a principal for the acts of an independent contractor. *See Brooks v. Hayes,* 133 Wis. 2d 228, 248–49, 395 N.W.2d 167 (1986).

its doctors and nurses, but only procures them to act solely upon their own responsibility, no longer reflects the fact. The complex manner of operation of the modern-day medical institution clearly demonstrates that they furnish far more than mere facilities for treatment. ... Certainly, the person who avails himself of our modern 'hospital facilities' ... expects that the hospital staff will do all it reasonably can to cure him and does not anticipate that its nurses, doctors and other employees will be acting solely on their own responsibility." *Misericordia,* 99 Wis. 2d at 724.

Consistent with this concept of the modern-day hospital facilities, a patient who is unaware that the person providing treatment is not the employee or agent[7] of the hospital should have a right to look to the hospital in seeking compensation for any negligence in providing emergency room care. The fact that, unbeknownst to the patient, the physician was an independent contractor should not prohibit from seeking compensation from the hospital which offers the emergency room care.

Accordingly, we hold that, unless the patient knows, or should have known, that the provider of health care is an independent contractor, a hospital can be held liable under the doctrine of apparent

[7]In holding a hospital liable for the acts of one perceived to be an agent, we do not retreat from our holding in *Arsand v. City of Franklin,* 83 Wis. 2d 40, 264 N.W.2d 579 (1978), that the liability attaches only where the agent is an agent/servant as opposed to an agent/independent contractor. If a patient knows, or should have known, that the person treating him or her is an agent/independent contractor, then there will be no liability under the doctrine of apparent authority.

authority for the negligent acts of the physicians retained by the hospital to provide emergency room care, irrespective of the fact that the person who committed the negligent act was an independent contractor. The elements of apparent authority, as explained in *Schaefer*, 89 Wis. 2d at 489–90, are equally applicable when the action involves a tort claim brought against a hospital for negligence in providing emergency room care. For a hospital to be liable under the doctrine of apparent authority, a plaintiff must show that: (1) the hospital, or its agent, acted in a manner which would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence. *See Hansche v. A. J. Conroy, Inc.*, 222 Wis. 553, 560–61, 269 N.W. 309 (1936).

Trinity's concern—that applying the doctrine of apparent authority to hold a hospital liable for the negligence of an independent contractor would make a hospital liable for all acts of negligence within the hospital—is without foundation. The rule we adopt today applies only where the patient looks to the hospital as the provider of health care, and the hospital selects the physicians and its staff. Where a patient seeks care from a physician who then uses the hospital facilities, the hospital would not be liable under the doctrine of apparent authority.

In addition, Trinity's reliance upon *Misericordia*, as defining the areas in which a hospital may be

liable, is misplaced. As Trinity itself noted, *Misericordia* addressed only the following two questions:

"1. Does a hospital owe a duty to its patients to use due care in the selection of its medical staff and the granting of specialized surgical (orthopedic) privileges?

"2. What is the standard of care that a hospital must exercise in the discharge of this duty to its patients and did Misericordia fail to exercise that standard of care in this case?" *Misericordia,* 99 Wis. 2d at 721.

In *Misericordia,* we did not consider the question of whether a hospital could be liable for the acts of its independent contractors under the doctrine of apparent authority. Thus our holding in *Misericordia* does not preclude our conclusion that a hospital can also be liable under the doctrine of apparent authority for the negligence of independent contractors.

Some question has been raised in the present case concerning (1) what a plaintiff must show to prove acts by the hospital sufficient to lead a reasonable person to conclude that the alleged negligent individual was an employee of the hospital, and (2) what must be shown to prove reliance. In answering these concerns, we find the decisions of other jurisdictions instructive.

The cases from other jurisdictions indicate that the first element of apparent authority—acts by the hospital or agent justifying belief in an agency relationship—can be proven without an express representation by the hospital that the individual alleged to be negligent is an employee. *Paintsville,* 683 S.W.2d at 256. Many courts have concluded that a hospital, by providing emergency room care and by failing to advise patients that they were being treated by the

hospital's agent and not its employee, has created an appearance that the hospital's agents, not independent contractors, will provide medical care to those who enter the hospital. *E.g., Capan,* 287 Pa. Super. at 369–70; *Hannola v. Lakewood,* 68 Ohio App. 2d 61, 64–65, 426 N.E.2d 1187 (1980). *See also Mduba v. Benedictine Hospital,* 52 A.D.2d 450, 453, 384 N.Y.S.2d 527, 529 (1976) (court stated that "[p]atients entering the hospital through the emergency room, could properly assume that the treating doctors and staff of the hospital were acting on behalf of the hospital").

The rationale underlying these cases is that generally people who seek medical help through the emergency room facilities of modern-day hospitals are unaware of the status of the various professionals working there. Unless the patient is in some manner put on notice of the independent status, it would be natural for the patient to assume that these people are employees of the hospital. *E.g., Arthur,* 169 N.J. Super. at 583. Based upon these cases, we conclude that, if Pamperin proves that Trinity held itself out as a provider of emergency room care without informing Pamperin that the care was provided by independent contractors, Pamperin has satisfied the first requirement for proving liability under the doctrine of apparent authority.

Although not raised by the parties, we note that the second element of apparent authority—in those cases where the acts of the agent create the appearance of authority, knowledge of and acquiescence in those acts by the principal must be proven—is not at issue in this case because it is not the acts of the agent of the principal which created the appearance of authority. It is the acts of Trinity (the principal) which

allegedly justified Pamperin's belief that an agency relationship existed.

We turn next to the third element of apparent authority—proof that the patient relied upon the acts of the hospital or its agent. In determining that a plaintiff acted in reliance upon the conduct of the hospital or its agent, courts have focused on the patient's reliance upon the hospital, through its staff, to provide medical care. They have not focused on the patient's reliance upon care from a particular physician. *See Mehlman,* 281 Md. at 274. Courts have uniformly recognized that, except when the patient enters a hospital intending to receive care from a specific physician while in the hospital, it is the reputation of the hospital itself upon which a patient relies. *Arthur,* 169 N.J. Super. at 583.

In *Grewe* the court stated that, "[i]n our view, the critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems." 404 Mich. at 251. Moreover, it has been recognized that the doctor-hospital relationship is unique because a patient, in seeking medical assistance from a hospital, in fact relies upon the staff as part of the hospital. *Stewart v. Midani,* 525 F. Supp. 843, 851 (N.D. Ga. 1981). According to the court in *Stewart,* by its very nature a hospital represents that it is the hospital, through its employees, which provides care to the sick and injured. *Id.*

We agree with these decisions that the critical distinction is whether the plaintiff is seeking care from the hospital itself or whether the plaintiff is

looking to the hospital merely as a place for his or her personal physician to provide medical care. Except for one who seeks care from a specific physician, if a person voluntarily enters a hospital without objecting to his or her admission to the hospital, then that person is seeking care from the hospital itself. An individual who seeks care from a hospital itself, as opposed to care from his or her personal physician, accepts care from the· hospital in reliance upon the fact that complete emergency room care—from blood testing to radiological readings to the endless medical support services—will be provided by the hospital through its staff. We therefore hold that, if Pamperin proves that he relied upon the hospital to provide complete emergency room care, rather than upon a specific physician, Pamperin has met his burden of proving reliance under apparent authority.

We turn now to Pamperin's assertion that Trinity should be liable for Boex's negligence under the nondelegable duty exception to the doctrine of respondeat superior. Pamperin argues that, because the Wisconsin Administrative Code requires hospitals to have a qualified radiologist available to interpret films and to supervise the hospital's radiology department,[8] this "statutory" duty imposes a nondelegable

---

[8]The particular Administrative Code provision cited by Pamperin provides in pertinent part:

"(1) The hospital shall have diagnostic X-ray facilities available ....
"(a) The hospital shall maintain or shall have available radiological services according to needs of the hospital.
"1. The hospital shall maintain or shall have diagnostic x-ray facilities available in the hospital building proper or in an adjacent clinic or medical facility that is readily accessible to the hospital patients, physicians, and personnel.
"....

212

duty on hospitals to provide radiological services. To support this contention, Pamperin cites a recent decision from this court in which we noted that "a nondelegable duty 'may be imposed by statute, *by contract,* by franchise or charter or by common law.'" *Brooks v. Hayes,* 133 Wis. 2d 228, 247, 395 N.W.2d 167 (1986) (emphasis in original).

Pamperin is correct in asserting that a nondelegable duty may be imposed by statute. It does not follow, however, that the requirement in the Administrative Code that radiological services be available necessitates the conclusion that providing radiological services is a nondelegable duty. The fact that a statute imposes a duty does not mean that the duty is a nondelegable duty. The theory underlying the nondelegable duty exception is that "certain responsibilities of a principal are so important that the principal should not be permitted to bargain away the risks of performance." *Arsand,* 83 Wis. 2d at 54 n. 8. Pamperin has presented no persuasive reasons, and we are not aware of any, why the duty to have a radiologist available is so important that a hospital may not avoid liability by hiring another to provide radiological services. Trinity, having hired an independent contractor to provide radiological services, has fulfilled its duty under the Administrative Code to have radiological services available. The Administrative Code requires nothing further from Trinity.

"(c) Personnel adequate to supervise and conduct the services shall be provided, and the interpretation of radiological examinations shall be made by physicians competent in the field.

"1. The hospital shall have a qualified radiologist, either full-time or part-time on a consulting basis, both to supervise the department and to interpret films that require specialized knowledge for accurate reading." Wis. Admin. Code sec. H 24.10(1) (1984).

213

We recognize that other jurisdictions have concluded that the provision of radiological services is a nondelegable duty. *E.g., Marek v. Professional Health Services, Inc.,* 179 N.J. Super. 433, 441, 432 A.2d 538 (1981). However, we are not convinced that the duty to have a radiologist available is a duty which a hospital may not delegate to an independent contractor. A hospital which hires an independent contractor to provide radiological services would remain liable for any failure on its part to exercise care in selecting its radiologist. *Misericordia,* 99 Wis. 2d at 744. In addition, the selected radiologist would be personally liable for any negligence. We are satisfied that a hospital's duty to provide radiological services may be delegated. Accordingly, we conclude that Pamperin may not recover from Trinity under the nondelegable duty exception.

In summary, we hold that Pamperin has a cause of action against Trinity under the doctrine of apparent authority for the negligence of Dr. Boex. We further conclude that Pamperin does not have an actionable claim based upon either the theory of respondeat superior of nondelegable duty. We therefore reverse the court of appeals' affirmance of the circuit court's dismissal of Pamperin's cause of action against Trinity and St. Paul. Because the circuit court has not had the opportunity to decide the parties' motions for summary judgment in light of our conclusion that a cause of action based upon apparent authority can be brought against a hospital for the negligent provision of emergency room care, we remand this case to the circuit court for it to reinstate Trinity and St. Paul as parties to this action and to

reconsider whether either party is entitled to summary judgment.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for proceedings consistent with this opinion.

STEINMETZ, J. (dissenting). I dissent from the majority opinion. Notwithstanding the fact that plaintiffs are in this court only because they failed to serve Dr. Boex before the statute of limitations passed, the majority of this court now holds that Trinity Memorial Hospital may be liable for the negligence of Dr. Boex, an independent contracting radiologist. His existence was not even known by the plaintiff at the time of treatment, nor was any reliance placed on Dr. Boex's reading of the x-rays.

The majority applies the doctrine of apparent authority to hold the hospital liable for the negligence of Dr. Boex, an independent contractor who was not an employee or agent of the hospital. The majority's contrived attempt to find the ingredient of reliance necessary to sustain a theory of apparent authority is unpersuasive.

To begin with, the precise holding of the majority is unclear. At page 193 of the slip opinion the holding is stated as follows: "[W]e conclude that when a hospital holds itself out to the public as providing complete medical care, a hospital can be held liable under the doctrine of apparent authority for the negligent acts of the physicians retained by the hospital to provide emergency room care, irrespective of the fact that the person who committed the negligent act was an independent contractor." This is far broader than the court's later statement of its holding at page 208 of the

slip opinion as follows: "The rule we adopt today applies only where the patient looks to the hospital as the provider of health care and the hospital selects the physicians and its staff." When read together, it is impossible to determine the true holding of the court and the precise scope of the decision.

The majority correctly states that in order for liability to attach under an apparent agency theory, three elements must be present: (1) acts by the agent or principal justifying belief in the agency; (2) knowledge thereof by the party sought to be held; (3) reliance thereon by the plaintiff, consistent with ordinary care and prudence. *Schaefer v. Dudarenke,* 89 Wis. 2d 483, 489–90, 278 N.W.2d 844 (1979). However, the majority fails to explain how the first element was satisfied in this case at all. Further, as to the third element, there is no showing in the facts that reliance was placed by this plaintiff on Dr. Boex's reading and opinion of the x-ray whether correct or negligently in error.

The majority begins its analysis of apparent authority by pronouncing that: "Under apparent authority, a principal may be held liable for the acts of one who reasonably appears to a third person, through acts by the principal or acts by the agent if the principal had knowledge of those acts and acquiesced in them, to be authorized to act as an agent for the principal." Majority op. at 203. That statement does not fully and accurately set forth the law because it fails to even mention the necessity and critical element of reliance, which is the foundational ingredient of an apparent authority claim.

With respect to the first element—acts by the principal or agent justifying belief in an agency relationship—the majority relies on the rationale of

other jurisdictions that "generally people who seek medical help through the emergency room facilities of modern-day hospitals are unaware of the status of the various professionals working there." Majority at 210. The majority concludes that the first element of apparent agency is satisfied upon proof that a hospital "held itself out as a provider of emergency room care without informing Pamperin that the care was provided by independent contractors." Majority at 210. This statement is problematic in at least two respects.

First, this is not a case of an emergency room doctor providing services to the patient as in some of the cases relied on by the majority. The treating physician in this case was Dr. Schulgit; Dr. Boex did not work in the emergency room, nor did he read Pamperin's x-rays until the following day. Thus, the plaintiff did not even know of his presence or existence, much less that Dr. Boex or anyone would read the x-ray in addition to Dr. Schulgit. It is incomprehensible that the patient "'could properly assume'" that the treating doctors and staff of the hospital were acting on behalf of the hospital. Majority op. at 210. There is nothing in this case allowing for such assumption and even if there were, Dr. Schulgit was the treating physician in this case, not Dr. Boex.

Second, the majority, at page 210 of the slip opinion, states: "Many courts have concluded that a hospital, by providing emergency room care and by failing to advise patients that they were being treated by the hospital's agent and not its employee, has created an appearance that the hospital's agents, not independent contractors, will provide medical care to those who enter the hospital." This suggests that a sign posted in the emergency room regarding the legal relationship of persons rendering direct or indirect

217

assistance could establish or avoid liability. Or perhaps a hospital could protect itself from liability by ascertaining an individual's knowledge of the hospital employment structure and providing the requisite information through yet another lengthy form to be processed by a patient or relatives upon admission of the individual to the emergency room.

As to the third element—reasonable reliance on the apparent agency by the plaintiff—the majority misconstrues the meaning and applicability of this element altogether. The majority improperly focuses, as did the courts in the cases cited by the majority, on whether the plaintiff relied *on the reputation of the hospital.* Majority op. at 211. This focus is misplaced; under the doctrine of apparent authority, which is basically a theory of agency by estoppel, the question is whether a patient reasonably relied on the *apparent agency relationship, see Iowa National Mut. Ins. Co. v. Backens,* 51 Wis. 2d 26, 36, 186 N.W.2d 196 (1971), not whether reliance was placed on the reputation of the hospital.

Furthermore, patients rarely, if ever, would elect to receive emergency medical care at a particular hospital based on the contractual arrangement between the hospital and staff physicians. Most probably, a hospital is typically chosen on the basis of the geographic proximity of the emergency room to the injury, condition or accident. Contrary to the suggestion implicit in the majority opinion, a person needing emergency care does not exercise deliberate and informed choice or "shop around" for emergency medical care services. Nor is the decision likely ever to be made based upon the employment structure contained within the hospital. More often than not, the receiving hospital is chosen by the driver of the

emergency vehicle or private care conveyance and the primary concern of all involved is to get to the closest hospital as quickly as possible. The reputation of the hospital is likely only rarely considered; rather, its convenience is the greatest consideration in the patient's mind, assuming the patient is even conscious at the time. In this case, there is nothing in the record to show that it was the plaintiff who selected Trinity Hospital for treatment. The majority states the plaintiff was taken to Trinity, not that he selected Trinity. Majority op. at 194.

Furthermore, the majority's broad definition of "seeking care from the hospital," *i.e.,* where "a person voluntarily enters a hospital without objecting to his or her admission to the hospital," (majority op. at 212) is simplistically unrealistic in the context of emergency room admissions. Webster defines "emergency" as "an unforeseen combination of circumstances or the resulting state that calls for immediate action ... a sudden bodily alteration such as is likely to require immediate medical attention (as a ruptured appendix or surgical shock)." Webster's Third New International Dictionary (1967). Faced with a medical emergency which oftentimes requires immediate treatment, a person cannot be held to have made a truly voluntary or meaningful choice of a hospital simply because he or she did not object to the facility. This Hobson's Choice is merely a self-serving method of creating the element of reliance where it does not in reality exist.

Under the doctrine of apparent authority as this court has consistently applied the theory, the real issue here is whether Pamperin could have reasonably relied on the alleged acts of Trinity or Dr. Boex to justify Pamperin's belief that an agency relationship existed. However, in the context of this case, there is

not a factual basis to examine this issue. Because Pamperin was not even aware of the existence of Dr. Boex until after the statute of limitations passed, he cannot under any stretch of the imagination be said to have "relied" on anything with respect to this physician. Without even knowing the man existed, Pamperin could not have formed a belief regarding Dr. Boex's relationship to the hospital, much less relied on that belief. If Pamperin sought instead to hold Trinity liable for Dr. Schulgit's negligence, there might be a factual basis, if not a legal basis, to make an apparent authority claim. That is, assuming the first two elements of apparent authority were satisfied, a factual issue might arise as to whether Pamperin justifiably believed Dr. Schulgit was an agent of the hospital and relied on that belief when Dr. Schulgit treated him. Here, however, the patient was discharged before Dr. Boex entered the picture, and the radiologist's existence was not known to Pamperin until more than two years had passed. Thus, there is not a factual basis under which an apparent authority claim can be meaningfully discussed.

While the majority correctly concludes that *Johnson v. Misericordia* is inapposite to the determination of this issue, it quotes substantially from the *Misericordia* opinion. Majority op. at 206–207. While the general pronouncements excerpted from the *Misericordia* opinion may be perfectly true, taken out of the context of the issues presented in *Misericordia,* they are likewise perfectly meaningless. In reality, *Misericordia* would be applicable to this case only to the extent that a claim would be made that the hospital was negligent in hiring Lakeview Corporation to perform radiologic services. No such claim is advanced in this case.

Furthermore, despite the apparent limitation of hospital liability to "negligent acts of the physicians retained by the hospital to provide emergency room care." (Majority op. at 208) the majority would permit liability in this case, even though Dr. Boex was not retained by the hospital to provide emergency room care. Dr. Boex was an employee of Lakeview Corporation, an independent contractor who contracted with Trinity to provide all radiologic services, whether the need for these services originated in the emergency room or from another department of the hospital. The distinction between independent contractors providing emergency room care and those working elsewhere in the hospital not only appears to emanate from an artificial and arbitrary line, but it does not appear to have been followed in this case.

Finally, the majority opinion raises more questions than it answers. For example, where an unconscious patient is conveyed to an emergency room, is the reliance element negated? Does a public or private ambulance conveyance become an agent for the hospital for liability purposes if the ambulance driver rather than the patient selects the hospital?

In sum, under the majority's decision, the concept of reliance within an apparent agency context is strained to the breaking point. The majority has, in effect, rewritten the contractual relationship between Trinity and Dr. Boex and has converted the radiologist's role for liability purposes from an independent contractor to an agent of the hospital. This conversion effectively renders the hospital liable for any activity occurring within its four walls with the possible exception of visitors' behavior, unless, of course, the

hospital can avoid liability altogether by merely strategically scattering a few signs at the emergency room door and within the hospital describing the employment relationship of various medical departments to the hospital and the legal effect thereof.

I am authorized to state that JUSTICE WILLIAM A. BABLITCH joins this dissent.