**LATHAM, Appellant,**

v.

**OHIO STATE UNIVERSITY HOSPITAL, Appellee.**

[Cite as *Latham v. Ohio State Univ. Hosp.* (1991), 71 Ohio App.3d 535.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–999.

Decided March 26, 1991.

*Law Offices of James L. Mackin, James L. Mackin* and *Nan M. Still*, for appellant.

*Emens, Hurd, Kegler & Ritter Co., L.P.A., William J. Brown, Karl W. Schedler* and *Timothy T. Tullis*, for appellee.

KLINE, Judge.

Plaintiff-appellant, Verena Latham, filed a complaint in the Ohio Court of Claims against defendant-appellee, the Ohio State University Hospital. The complaint alleged that appellee was negligent by failing to properly diagnose and treat appellant's condition.

The Court of Claims never addressed the issue of appellee's negligence, since it found that the treating physician was not an employee or agent of appellee and that the doctrine of agency by estoppel was not applicable. Hence, the Ohio Court of Claims rendered judgment in favor of appellee.

Appellant has appealed the court's judgment and raises the following two assignments of error:

"A. The court incorrectly determined that a treating physician, who is a member of a private corporation, which contracts with a public hospital for emergency room services, is an independent contractor physician and not an employee and/or agent of the hospital.

"B. The court committed error when it determined that the exception of agency by estoppel is not applicable to this case."

In August 1988, the appellant began receiving prenatal care from appellee's clinic. In September 1988, tests revealed that the unborn child's lungs were not developing properly. Appellant was admitted into the hospital by appellee and a cesarean section was performed on September 23, 1988.

Appellant was discharged by appellee at approximately 10:15 a.m. on September 27, 1988. Later that day, she began having severe pains in her naval area. As the pain worsened late that night, she had her father take her to appellee's emergency room. The emergency room treating physicians were employed by a private medical corporation. Appellee contracted with the private medical corporation to provide emergency room physician services.

Appellant informed the treating physician of the following: (1) the locations of her pain, (2) the severity of her pain, (3) her shortness of breath, and (4) her vomiting prior to her arrival at the emergency room. Medical records showed that her abdomen radiated a noticeable amount of heat and was blue-purple in color.

The treating physician was concerned about a possible life-threatening pulmonary problem. Over a five-hour period, numerous diagnostic tests were performed. The life-threatening pulmonary possibility was ruled out. The conclusion was that appellant was experiencing normal pain and bleeding associated with the cesarean section operation. Appellant was given Demerol for her pain and a prescription for additional pain medication. She was discharged by 4:00 a.m. on September 28, 1988.

Appellant's condition did not improve. She was taken by her mother to the Grant Medical Center emergency room at 6:51 p.m. on September 29, 1988. Tests revealed that a portion of the small intestine slipped through an opening of the peritoneum. This portion of the intestine had become infected. Surgery was required to remove the infected tissue. Appellant was not released from the hospital until October 9, 1988.

■ The first issue is whether the physician who treated appellant at appellee's emergency room was an employee or agent of the appellee. If the physician was an employee or agent of appellee, then liability might be imposed upon appellee for any negligent acts performed by that physician

under the doctrine of *respondeat superior*. *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 254–255, 553 N.E.2d 1038, 1042–1043.

" 'The relation of principal and agent or master and servant is distinguished from the relation of employer and independent contractor by the following test: Did the employer retain control, or the right to control, the mode and manner of doing the work contracted for? If he did, the relation is that of principal and agent or master and servant. * * * ' " *Id.*, 50 Ohio St.3d at 255, 553 N.E.2d at 1043, quoting *Miller v. Metropolitan Life Ins. Co.* (1938), 134 Ohio St. 289, 291–292, 12 O.O. 93, 94, 16 N.E.2d 447, 448.

Appellant, citing *Albain*, argues that appellee retained the right to control the mode and manner of doing the work contracted for. Appellant states that the attending physician at the emergency room (1) held the title of Assistant Clinical Professor in the Department of Emergency Medicine at the Ohio State University, (2) received payment from appellee for his services in the form of benefits such as football tickets and the use of appellee's facilities, and (3) used procedures in the emergency room that were set up by appellee.

The record does show that the attending physician who worked for a private medical corporation was also a clinical assistant professor for appellee. He was an employee of appellee when he was working as a clinical assistant professor. This court discussed this issue in *Katko v. Balcerzak* (1987), 41 Ohio App.3d 375, 536 N.E.2d 10. The *Katko* case involved an Ohio State University staff physician who also held a faculty post at the university. This court stated:

" * * * The fact that Dr. Balcerzak rendered the services to the plaintiff's decedent as a private patient and received payment for his services through the partnership, no part of which was paid over to Ohio State University, tends to indicate that, in treating the patient, Dr. Balcerzak was acting outside the scope of his duties for Ohio State University and conducting a business of his own, albeit in connection with his employment at Ohio State University." *Id.*, 41 Ohio App.3d at 379, 536 N.E.2d at 14.

The evidence in this case does show that the attending physician did receive some benefits from appellee such as the possibility of receiving football tickets and the use of appellee's facilities. However, the evidence shows that he received these benefits for his work as a clinical assistant professor, not as an emergency room physician.

This court cannot find in the record any evidence showing that the procedures used in the emergency room by the attending physician were set up by appellee so that appellee could control the mode and manner of the work involved.

A reviewing court cannot reverse a judgment as being against the manifest weight of the evidence when it is supported by some competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

In the case *sub judice*, there was competent credible evidence showing that the attending physician in the emergency room was an independent contractor rather than an employee or agent of appellee. At trial, the attending physician testified that when he saw patients in the emergency room, he was not acting as an employee of appellee, but worked for a private physician practice group. He further testified that he received no compensation from appellee for those emergency room services, but was paid by the private physician practice group. There was no evidence to rebut this testimony. Hence, the Court of Claims did not err in finding that the attending physician in the emergency room was an independent contractor and not an employee or agent of appellee.

Appellant's first assignment of error is overruled.

██ Appellant next asserts that even if the attending physician is an independent contractor, appellee would still be liable under the doctrine of agency by estoppel.

The Ohio Supreme Court in *Albain* set forth the necessary factors that a plaintiff must prove for a hospital to be held liable for the negligent acts of an independent physician. In paragraph four of the syllabus, the court in *Albain* held:

"A hospital may, in narrowly defined situations, under the doctrine of agency by estoppel, be held liable for the negligent acts of a physician to whom it has granted staff privileges. In order to establish such liability, a plaintiff must show that: (1) the hospital made representations leading the plaintiff to believe that the negligent physician was operating as an agent under the hospital's authority, and (2) the plaintiff was thereby induced to rely upon the ostensible agency relationship."

██ In the case *sub judice*, there was no evidence as to the first element that appellee made representations that the attending physician was operating as its agent. The existence of a hospital does not constitute an inducement that all physicians therein are acting under the hospital's direction and control. *Id.*, 50 Ohio St.3d at 263, 553 N.E.2d at 1049. See *Cooper v. Sisters of Charity* (1971), 27 Ohio St.2d 242, 254, 56 O.O.2d 146, 152–153, 272 N.E.2d 97, 104–105.

Appellant argues that she believed that the attending physician was an employee of appellee. She contends this belief is based on her "youth, lack of

education and experience, and her inability to individually pay for medical treatment * * *." This argument has no merit since her belief is not the test. Here, there was no evidence that appellee made any representations that would lead appellant to believe that the attending physician was appellee's employee. Hence, appellant has failed to meet her burden of proof as to the first element.

As to the second element, the *Albain* court stated:

" '[P]atients rarely, if ever, would elect to receive emergency medical care at a particular hospital based on the contractual arrangement between the hospital and staff physicians. Most probably, a hospital is typically chosen on the basis of the geographic proximity of the emergency room to the injury, condition or accident. * * * [A] person needing emergency care does not exercise deliberate and informed choice or "shop around" for emergency medical care services. Nor is the decision likely ever to be made based upon the employment structure contained within the hospital. * * * ' " *Id.*, 50 Ohio St.3d at 264, 553 N.E.2d at 1050, fn. 12, citing *Pamperin v. Trinity Memorial Hosp.* (1988), 144 Wis.2d 188, 218–219, 423 N.W.2d 848, 860 (Steinmetz, J., dissenting).

In this case, there is also no evidence that appellant relied on an ostensible agency relationship. Appellant returned to the Ohio State University Hospital where she had been discharged earlier that day. She first started going to appellee when she moved back to Columbus in 1988. She testified that the main reason she chose to go to appellee was for the reason her sister told her it would be a nice place to go. Her sister had all her prenatal care there. Appellant phoned appellee and made an appointment. Hence, appellant has also failed to meet her burden of proof as to the second element.

Appellant's second assignment of error is overruled.

The judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

BOWMAN, P.J., and JOHN C. YOUNG, J., concur.

ROGER L. KLINE, J., of the Pickaway County Court of Common Pleas, sitting by assignment.