OPINION
{¶ 1} On July 2, 2000, Kathleen J. Kaiser filed a complaint in the Court of Claims of Ohio against The Ohio State University ("OSU"). In her complaint, Ms. Kaiser averred that on January 27, 1999, she was transported to the emergency department of the OSU Medical Center. She had a history of four days of lower abdominal pain, vomiting and diarrhea. Ms. Kaiser was seen by Michelle Dayton, M.D., a resident, and Michael Waite, M.D., the attending physician. The complaint further averred that a urinalysis was conducted, no specific diagnosis was given, and Ms. Kaiser was discharged with instructions to take fluids and take "Tylenol" for pain.
 {¶ 2} The complaint set forth a claim for medical malpractice, alleging that Drs. Waite and Dayton failed to diagnose Ms. Kaiser's condition as a ruptured appendix and that as a result of such failure, Ms. Kaiser did not undergo surgery for such condition until February 4, 1999 and suffered various complications. Ms. Kaiser asserted that Drs. Dayton and Waite were acting within the scope of their employment with OSU during their care and treatment of her.
 {¶ 3} OSU answered, admitting that Dr. Dayton was a resident physician employed by OSU and acting within the scope of her employment with OSU during her treatment of Ms. Kaiser. OSU admitted that Dr. Waite was a professor of medicine at OSU College of Medicine but denied that Dr. Waite was within the scope of his employment with OSU when he treated Ms. Kaiser.
 {¶ 4} An evidentiary hearing was held to determine whether Dr. Waite was entitled to immunity pursuant to R.C. 9.86 and 2743.02(F). The parties filed briefs. On February 13, 2002, the Court of Claims rendered a decision and judgment entry. The Court of Claims determined that Dr. Waite was not acting within the scope of his employment with OSU and, therefore, was not entitled to civil immunity. The decision included Civ.R. 54(B) language that there was no just cause for delay.
 {¶ 5} Ms. Kaiser (hereinafter "appellant") has appealed to this court, assigning the following error for our consideration:
 {¶ 6} "I. THE LOWER COURT ERRED IN FINDING THAT AN EMERGENCY ROOM PHYSICIAN (DR. WAITE) WAS NOT ENTITLED TO IMMUNITY, DESPITE SEEING THE PATIENT ONLY IN THE CAPACITY AS A SUPERVISOR FOR A RESIDENT WHO WAS THE PRIMARY CARE PROVIDER."
 {¶ 7} This court has granted Dr. Waite leave to file an amicus brief.
 {¶ 8} The sole issue before this court is whether the Court of Claims erred in determining that Dr. Waite was not entitled to immunity pursuant to R.C. 9.86 and 2743.02(F). R.C. 9.86 states, in pertinent part:
 {¶ 9} "* * * [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities * * *."
 {¶ 10} Under R.C. 109.36(A), an "officer" or "employee" includes a person who, at the time the cause of action arises, is rendering medical services pursuant to a personal services contract or purchased service contract with the state. R.C. 2743.02(F) provides that the Court of Claims has the exclusive, original jurisdiction to determine whether an officer or employee is entitled to personal immunity under R.C. 9.86.
 {¶ 11} An immunity determination involves a question of law.Nease v. Medical College Hosp. (1992), 64 Ohio St.3d 396, 400, citingConely v. Shearer (1992), 64 Ohio St.3d 284. However, consideration of the specific facts is necessary, and judgments supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. See Scarberry v. The Ohio State Univ.
(Dec. 3, 1998), Franklin App. No. 98AP-143, citing Lowry v. Ohio StateHighway Patrol (Feb. 27, 1997), Franklin App. No. 96API07-835 and Brooksv. Ohio State Univ. (1996), 111 Ohio App.3d 342, 350.
 {¶ 12} The facts in the case at bar are not in dispute. Rather, the parties' arguments focus on the application of the law to the facts. The Court of Claims found that Dr. Waite was acting outside the scope of his employment with OSU (hereinafter "appellee") when he treated appellant because as the attending physician, Dr. Waite made the final decision on whether appellant would be admitted or discharged. In addition, the Court of Claims found significant the fact that Dr. Waite's practice group, Emergency Care Associates, Incorporated ("ECA"), billed appellant for Dr. Waite's services, and Dr. Waite's yearly salary from ECA was much greater than his yearly salary from appellee. Appellant and Dr. Waite assert that the Court of Claims failed to follow this court's precedents in Scarberry, supra, and Ferguson v. The Ohio State Univ. (June 22, 1999), Franklin App. No. 98AP-863, which cases found, under analogous facts, that the attending physicians were acting within the scope of their employment with appellee when they treated emergency room patients.
 {¶ 13} Appellee points to other cases from this court which held, in general, that when the treatment of patients is on a fee-for-service basis and where the physician bills the patient through a practice plan group, the physician is not acting within the scope of state employment. See Balson v. Ohio State University (1996),112 Ohio App.3d 33, discretionary appeal not allowed in (1996),77 Ohio St.3d 1484; Latham v. Ohio State Univ. (1991), 71 Ohio App.3d 535, motion to certify overruled in (1991), 62 Ohio St.3d 1409; Katko v.Balcerzak (1987), 41 Ohio App.3d 375; and Smith v. Univ. of Cincinnati
(Nov. 29, 2001), Franklin App. No. 01AP-404.
 {¶ 14} The cases cited by appellee indeed focus on the business aspects present in the state university hospital setting. Certainly, this court has in the past put emphasis on the economic/business aspects of the relationship between a physician working in a state university setting and the state university itself. While factors such as billing and the contractual relationships involved are certainly relevant, they are not determinative in and of themselves. SeeFerguson at 4-5 (while billing may be a relevant factor, it may not always be the determinative factor).
 {¶ 15} There is no bright line test in these types of cases. In Ferguson, we set forth fifteen factors which have been considered by this court in past cases. Many of these factors deal with corporate/billing/business aspects.[1] However, we stated that the key issue in immunity determinations is whether the physician saw the patient only in his or her capacity as an attending physician supervising residents or whether the physician saw the patient as his or her private patient. Id. at 5. Ferguson, like the case at bar, involved an emergency room situation. The physician was a member of the same practice group as Dr. Waite here, ECA. Again, the non-treatment aspects of the case (i.e., who bills the patient, who pays the malpractice insurance, and salary comparisons), in essence, followed the usual pattern in these cases. However, it was the facts surrounding the actual treatment of the patient which served as the critical basis for the decision in Ferguson.
 {¶ 16} As in the case at bar, the physician in Ferguson was the attending physician in the emergency room when the patient presented. Upon presentation, the patient was examined by a resident. The attending physician did not recall seeing the patient but testified that he would have discussed the case with the resident and reviewed the chart prior to the patient's discharge. The attending physician signed off on the emergency department record, noting that he provided or directly supervised the care of the patient. We determined that the attending physician's only involvement with the patient was to supervise the patient's care in his capacity as the attending physician supervising residents and, thus, was acting within the scope of his employment with appellee.
 {¶ 17} The Ferguson case is analogous to the facts presented here. In contrast, the cases cited by appellee are not analogous to the case before us or, at the very least, are not as analogous to this case as Ferguson and Scarberry. Balson involved a surgical procedure and postoperative care. Further, the patient in Balson was referred to the physician, as opposed to the situation presented in the case at bar.Katko did not even determine the issue of scope of employment. Rather, this court remanded the matter to the common pleas court to make such determination.[2] Further, there was no evidence of the type and extent of the treatment rendered. Smith also involved surgery, specifically, a kidney and pancreas transplant, and the patient was treated at a private hospital.
 {¶ 18} Latham did involve treatment in appellee's emergency room. However, in the narrative of the facts, there is no mention of a resident being involved in the treatment. Presumably, the physician inLatham treated the patient independently of any resident and of any teaching/supervisory role. The physician treated the patient for over five hours. There was virtually no evidence of any connection to appellee during the treatment of the patient other than the facility itself. This is not the situation in the case at bar.
 {¶ 19} Here, appellant was treated, in essence, by Dr. Dayton, the resident. Dr. Dayton took appellant's history and performed a physical exam. Appellant testified that she understood Dr. Dayton was her doctor. (Tr. at 161.) Later, Dr. Waite "came in," and appellant thought he was a surgeon. Id. Dr. Waite saw appellant for a maximum of four minutes. Id. at 164. A nurse and Dr. Dayton instructed appellant as to her "problem," and appellant's parents had a conversation with Dr. Dayton. Id. at 164-165.
 {¶ 20} This case is also analogous to our decision inScarberry. Indeed, our determination here is in line with both the analysis in the majority opinion and the analysis in the dissenting opinion of Scarberry. In Scarberry, again, the physician at issue was the attending physician in appellee's emergency department. The patient was seen by both a resident and the attending physician. In fact, the attending physician spent as much time with the patient as the resident, and he treated the patient both independently of the resident and with the resident, making suggestions. The attending physician testified that every patient has to have an attending physician and that he was responsible for the patients. This court noted that the patient was not specifically referred to the attending physician. We determined that the attending physician in Scarberry was acting within the scope of his employment with appellee.
 {¶ 21} The facts in the case at bar present an even stronger basis for finding immunity than those in Scarberry. Here, Dr. Waite did not have nearly the involvement with appellant that the attending physician in Scarberry had with the patient therein. Here, Dr. Waite saw appellant for a mere four minutes at the most. Essentially, the resident provided the care and treatment of appellant.
 {¶ 22} Appellee asserts that the key factors in these cases should be whether the physician had the ultimate authority to admit or discharge the patient, whether the physician billed the patient for his/her services, and whether the state entity paid the physician to provide medical services to patients. We have already discussed the business/billing aspects involved in these cases. Such aspects are relevant factors, but they are not determinative. Indeed, if they were, virtually all of the cases this court has dealt with and will deal with would have been decided against immunity given that the basic business structures set up between physicians' practice groups and the state universities are usually the same.
 {¶ 23} As for the authority to admit or discharge a patient, the evidence here shows that it is the attending physician who determines whether to admit or discharge a patient. (Tr. 129, 132.) Appellee asserts that it paid Dr. Waite to be a teacher and a researcher and to provide "faculty services" and that it did not pay Dr. Waite to treat patients. However, the evidence shows that Dr. Waite's duties in the emergency department were to both teach and treat and that such duties occurred simultaneously. Dr. Waite testified that he could not separate his duties to the patient and his duty to teach a resident. Id. at 130-131. Dr. Waite testified that the residents provided the bulk of the one-on-one care and that attending physicians were more supervisory. Id. at 132. Dr. Waite testified that he has a duty to take care of patients and teach residents and that these duties occur simultaneously. Id at 133.
 {¶ 24} Finally, Dr. Waite testified that he saw appellant in the capacity of supervising a resident. Id. at 126. Indeed, the evidence shows that a resident may only treat patients under the supervision of faculty. Id. at 69, 85, 150. ECA's business manager at the relevant time here testified that attending physicians are required to be present for a "significant portion of any kind of care" and that ECA charged for their supervision of residents. Id. at 43. Hence, the mere fact that the attending physician makes the ultimate decision as to admit or discharge a patient is not determinative of whether he or she acted within the scope of employment with appellee.
 {¶ 25} In addition, the fact that a physician/faculty member may be paid by his or her practice group to treat patients at a university hospital does not automatically mean that such physician is not acting within the scope of his or her employment with the university when treating patients at such hospital. Again, there is no bright line test in these cases. It is clear, however, that given the case law developed over the years, the immunity determination — especially in the emergency department context — may turn on a matter of degree: specifically, the degree to which an attending emergency room physician takes care of a certain patient independently of his or her duties as a physician supervising the work of a resident.
 {¶ 26} In the case at bar, Dr. Waite's involvement with the care of appellant was minimal and tends more toward a supervisory role. This case is analogous to Ferguson and Scarberry, and we must follow the precedent set in such cases. Because Dr. Waite's involvement with appellant was essentially in his capacity as an attending physician supervising Dr. Dayton's care and treatment of appellant, Dr. Waite was within the scope of his employment with appellee in his treatment of appellant and, therefore, he is entitled to immunity pursuant to R.C. 9.86. The Court of Claims erred as a matter of law in concluding otherwise.
 {¶ 27} Accordingly, appellant's sole assignment of error is sustained.
 {¶ 28} Having sustained appellant's sole assignment of error, the judgment of the Court of Claims of Ohio is reversed, and this cause is remanded to such court with instructions to enter a finding that Dr. Waite is entitled to immunity pursuant to R.C. 9.86 and to conduct further appropriate proceedings.
Judgment reversed and cause remanded with instructions.
PETREE and BRYANT, JJ., concur.
[1] It is interesting to note that from case to case, the actual billing/business practices in state university hospital settings appear to be fairly uniform.
[2] We note that part of the holding in Katko was superceded on other grounds by R.C. 2743.02(F) which, as stated above, grants exclusive jurisdiction for immunity determinations to the Court of Claims.