Jennifer POPHAL, and Joanne Hansen, Plaintiffs-Appellants,†

v.

Dr. W. James SIVERHUS, Defendant-Respondent,

Dr. Alan RIFKIN, Defendant,

Dr. Conrad L. ANDRINGA, Defendant-Respondent,

Dr. John McCLUNG, St. Mary's Hospital Medical Center, Madison Anesthesiologists, S.C., Defendants,

THE DEAN MEDICAL CENTER, S.C., Defendant-Respondent,

Dr. Michael McHENRY, Dr. Robert P. Christmann, Defendants,

and WISCONSIN PATIENTS COMPENSATION FUND, Defendant-Respondent.

Court of Appeals

*No. 89-2080. Oral argument May 23, 1991.—Decided March 26, 1992.*

(Also reported in 484 N.W.2d 555.)

†Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the brief of *J. Timothy Gratz* of *Gratz Law Office, S.C.* of Madison. Oral argument by *J. Timothy Gratz* of *Gratz Law Office, S.C.*

For the defendants-respondents, Dr. W. James Siverhus, Dr. Conrad L. Andringa, the Dean Medical Center, S.C., and Wisconsin Patients Compensation

Fund, the cause was submitted on the brief of *Bradway A. Liddle, Jr.* and *Catherine M. Rottier* of *Boardman, Suhr, Curry & Field* of Madison. Oral argument by *Catherine M. Rottier* of *Boardman, Suhr, Curry & Field.*

Before Gartzke, P.J., Dykman, and Sundby, JJ.

GARTZKE, P.J. Jennifer Pophal and Joanne Hansen appeal from a judgment dismissing their medical malpractice complaint against Drs. Siverhus and Andringa, Dean Medical Center, St. Mary's Hospital Medical Center and the Wisconsin Patients Compensation Fund. We conclude that the plaintiffs' failure to move for a mistrial has not cost them their right to appellate review. The plaintiffs contend that the trial court abused its discretion when it (a) excluded evidence of the opinions and diagnoses of treating physicians who did not testify; (b) excluded opinions of physicians who did not testify but were employed by two defendants; (c) prevented medical experts from testifying that they based their opinions partly on the opinions of treating physicians who did not testify; (d) failed to exclude a nurse's note appearing in the medical record; (e) quashed a subpoena; (f) refused to order the defendants to supplement their answers to interrogatories; (g) allowed a medical expert to testify to a statement by a nontestifying physician; (h) refused to allow cross-examination of an expert regarding his possible bias; and (i) prevented plaintiffs from presenting rebuttal evidence. We find no error other than that claimed in contention (g), and that error was harmless. We therefore affirm.

A. Background

On June 28, 1980, four weeks past her expected due date, Jennifer was born to Joanne at St. Mary's Hospital in Madison, Wisconsin. Dr. Siverhus was the obstetri-

cian. Jennifer was delivered by a non-emergency caesarian section. She could not breathe on delivery without resuscitation. Dr. Andringa, a pediatrician, resuscitated her. She has cerebral palsy and brain damage.

The controversy centers on whether hypoxia (oxygen deprivation) at Jennifer's birth caused her cerebral palsy and brain damage, and, if so, whether Drs. Siverhus and Andringa had negligently caused those injuries. Several medical experts testified for each side. The experts for Jennifer and Joanne testified that hypoxia caused Jennifer's injuries, and Dr. Andringa's ineffective resuscitation was a cause of the hypoxia. The defendants' experts testified that hypoxia did not cause Jennifer's injuries and that Dr. Andringa had used an acceptable method of resuscitation.

The jury found that Dr. Siverhus had not been negligent and that Dr. Andringa had been negligent but his negligence was not a cause of Jennifer's injuries.

Plaintiffs fairly infer that the jury considered the cause question very close. In its first verdict, the jury answered the cause question "Don't know" as to Dr. Andringa. The court sent the jury back to answer "yes" or "no" and the jury returned with a "no" answer. The trial court denied the plaintiffs' motion for a new trial and dismissed their complaint.

## B. Motion for Mistrial

Defendants assert that because the plaintiffs never moved for a mistrial, they waived the right to raise the assigned errors on appeal. We reject the defendants' contention.

Defendants rely on several supreme court precedents for the rule that failure to move for a mistrial waives a claimed error even if a proper and timely objection was made. Such was the holding in each of the

542

following cases: *Milwaukee & Suburban Transp. Corp. v. Milwaukee County,* 82 Wis. 2d 420, 432, 263 N.W.2d 503, 510-11 (1978); *Valiga v. National Food Co.,* 58 Wis. 2d 232, 247-48, 206 N.W.2d 377, 385-86 (1973); *Leibl v. St. Mary's Hosp.,* 57 Wis. 2d 227, 231, 203 N.W.2d 715, 717-18 (1973); *Kink v. Combs,* 28 Wis. 2d 65, 72, 135 N.W.2d 789, 793-94 (1965).[1]

In 1984, the supreme court clarified the mistrial/waiver rule in *Lobermeier v. General Tel. Co.,* 119 Wis. 2d 129, 349 N.W.2d 466 (1984). The court said:

> [I]f a litigant has raised a claim of error *of so serious a nature that it may warrant a mistrial,* the litigant must not only claim error but must demand the mistrial, for to fail to demand a mistrial is tantamount to an acknowledgement that the error is harmless, or at least it is not prejudicial to the degree that the aggrieved party is not willing to proceed on the assumption, or hope, there will be a favorable verdict despite the error.

*Id.* at 136, 349 N.W.2d at 470 (emphasis added).

---

[1]Many of the claimed errors relate to evidentiary rulings. The mistrial/waiver rule seems inconsistent with Wisconsin's Rules of Evidence, chs. 901-911, Stats., effective January 1, 1974. Wisconsin Rules of Evidence, 59 Wis. 2d Rvii, R1 (1973). No provision in the Rules of Evidence refers to a motion for a mistrial for evidentiary error, much less any necessity for it. Section 901.03(1), Stats., provides in substance that error may not be predicated upon an evidentiary ruling in the absence of a timely objection or motion to strike or offer of proof. An offer of proof was made. However, at least one supreme court case applying the mistrial/waiver rule to evidentiary rulings was decided after the Rules went into effect. *Milwaukee & Suburban Transp. Corp.* was decided in 1978.

We read the *Lobermeier* decision to mean that a motion for a mistrial is necessary only if error has occurred of so serious a nature that it warrants a mistrial,[2] and then only as to that error. This is consonant with the definition of mistrial in BLACK'S LAW DICTIONARY 1002 (6th ed. 1990) (citations omitted):

> An erroneous, invalid, or nugatory trial. A trial of an action which cannot stand in law because of want of jurisdiction, or a wrong drawing of jurors, or disregard of some other fundamental requisite before or during trial . . .. A device used to halt trial proceedings when error is so prejudicial and fundamental that expenditure of further time and expense would be wasteful if not futile . . ..
>
> "Mistrial" is equivalent to no trial and is a nugatory trial while "new trial" recognizes a completed trial which for sufficient reasons has been set aside so that the issues may be tried de novo.

Most of the errors raised by the plaintiffs on appeal are evidentiary. None of the evidentiary errors were so serious as to warrant a mistrial. The most serious claimed error is procedural: the trial court's refusal to allow plaintiffs to put in rebuttal evidence. To require plaintiffs to respond to that ruling by moving for a mistrial would be senseless. The ruling was firm. Nothing in

---

[2]Even so, because a stipulation was entered to proceed with eleven jurors, the court held that the defendant had not waived the right to review. *Lobermeier,* 119 Wis. 2d at 138, 349 N.W.2d at 471. More significantly, the *Lobermeier* court held that the trial court erred when it refused to permit a physician to testify, *id.* at 143–44, 149, 349 N.W.2d at 473, 476, although nothing in the opinion shows that plaintiffs had moved for a mistrial on the basis of that error.

the record even suggested that the trial court was more likely to grant a motion for mistrial. We conclude that a motion for a mistrial was unnecessary to any of the errors plaintiffs raise on appeal. Plaintiffs are entitled to review as of right as to each such claimed error.

Moreover, we may in our discretion review the claimed errors even if the plaintiffs lost the right of appellate review as of right because they failed to move for mistrial. The supreme court reviewed claimed errors, in spite of the mistrial/waiver rule, in three of the four cases the defendants rely on: *Milwaukee & Suburban Transp. Corp.,* 82 Wis. 2d at 432, 263 N.W.2d at 511; *Leibl,* 57 Wis. 2d at 231, 203 N.W.2d at 718; *Valiga,* 58 Wis. 2d at 248-49, 206 N.W.2d at 386. Only in the earliest of the four cases, *Kink,* 28 Wis. 2d at 72, 135 N.W.2d at 794, did the court apply the mistrial/waiver rule to bar review of a claimed error. The *Kink* court reviewed other claimed errors as to which no motion for mistrial was made. *Id.* at 74, 76-77, 135 N.W.2d at 794-96.

Seldom in the ceaseless flow of appeals before us do we see motions for mistrial. We repeatedly review errors when a timely objection has been made unaccompanied by a motion for a mistrial. We choose to follow our normal course, exercising our discretion to review each of the claimed errors, even if plaintiffs are not entitled to review as of right.

C. Evidentiary Issues

1. Hearsay—Records, Opinions or Diagnosis

Before trial, St. Mary's Hospital moved to prohibit the introduction of any doctor's opinion or diagnosis appearing in the medical records unless the doctor testified. The motion was directed primarily at the opinions or diagnoses of three treating physicians, none of whom

testified, regarding the cause of Jennifer's cerebral palsy. Plaintiffs relied on sec. 908.03, Stats., for the admission of the three doctors' opinions:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> . . .
>
> (6) A memorandum, report, record, or data compilation, in any form, of . . . opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances indicate lack of trustworthiness.

The opinions or diagnoses of the three physicians qualify for admission under sec. 908.03(6). The trial court nevertheless prohibited the introduction of those opinions or diagnoses in evidence, and the plaintiffs charge that error resulted. We disagree.

 The admission of evidence is generally within the discretion of the trial court. *State v. Pharr,* 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983). We review a trial court's ruling on the admissibility of hearsay evidence for abuse of discretion. *State v. Buelow,* 122 Wis. 2d 465, 476, 363 N.W.2d 255, 261 (Ct. App. 1984). To sustain a discretionary ruling we need only find that the trial court examined the relevant facts, applied a proper standard of law, and, using a rational process, reached a reasonable conclusion. *Franz v. Brennan,* 150 Wis. 2d 1, 6, 440 N.W.2d 562, 564 (1989). If the court relied on an erroneous understanding of an evidentiary rule, then it abused its discretion because it made an error of law. *State v.*

*Hutnik*, 39 Wis. 2d 754, 763, 159 N.W.2d 733, 737 (1968).

The trial court understood that opinions or diagnoses in medical records are admissible under sec. 908.03(6), Stats. The court nevertheless properly exercised its discretion to exclude the evidence, relying on *Noland v. Mutual of Omaha Ins. Co.*, 57 Wis. 2d 633, 205 N.W.2d 388 (1973). The *Noland* court held that sec. 908.03, Stats., does not necessarily require admission of a medical opinion or diagnosis in a record qualifying under that rule. *Id.* at 641-42, 205 N.W.2d at 393. "A medical record containing a diagnosis or opinion . . . may be excluded in the trial judge's discretion if the entry requires explanation or a detailed statement of the judgmental factors upon which the diagnosis or opinion is based." *Id.*[3] The trial court said that the crux of the case was "what caused the damage to the child, and when was it caused," that varying medical opinions would be produced at the trial and that the case involved expert against expert. The trial court properly refused to admit the opinions of Drs. Mantovani, Chua and Mellinger, unless they testified.

2. Hearsay—Admissions

Plaintiffs contend that the opinions of two of the three doctors in the medical records should have been admitted as admissions by party opponents. Dr. Chua was an employee of St. Mary's Hospital. Dr. Mantovani was an employee of Dean Medical Center. Plaintiffs rely on sec. 908.01(4), Stats.:

---

[3]When *Noland* was decided, sec. 908.03(6), Stats., was part of the then proposed Wisconsin Rules of Evidence. *Noland*, 57 Wis. 2d at 640-41, 205 N.W.2d at 392.

A statement is not hearsay if:

. . ..

(b) The statement is offered against a party and is:

1. *His* own statement . . . or

. . .

4. A statement by *his* agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship . . .. (Emphasis added.)

Plaintiffs assert that *Mercurdo v. County of Milwaukee,* 82 Wis. 2d 781, 264 N.W.2d 258 (1978), controls. We disagree. The *Mercurdo* court held that a medical student's statement in a hospital accident report qualified under sec. 908.01(4)(b)4, Stats., as an admission by a party opponent, the defendant county. *Id.* at 792, 264 N.W.2d at 263. The student was working in the hospital ward when the accident happened. *Mercurdo* establishes only that the statements of Drs. Chua and Mantovani were not hearsay as to their employers.

The court knew it faced an evidentiary dilemma. Dr. Chua's statement was admissible under sec. 908.01(4)(b)4, Stats., against *his* employer, St. Mary's Hospital, and Dr. Mantovani's statement was admissible against *his* employer, Dean Medical Center. Neither statement qualified for admission against Drs. Siverhus or Andringa, since they had not employed Drs. Chua and Mantovani.

The trial court perhaps could have instructed the jury that the statements were admissible against the hospital and medical center but not against Drs. Siverhus and Andringa. Nobody having suggested that solution, the court took an alternative approach. It balanced the

benefit to the plaintiffs from admitting the statements against the harm to Drs. Siverhus and Andringa and refused to admit the statements. The court did not abuse its discretion.

### 3. Opinions Based on Opinions

During the trial, the court prevented plaintiffs from eliciting testimony from Dr. Hecox that he based his expert opinion partly on the opinion of other treating doctors, including Dr. Mantovani. The court viewed this as an effort to put in evidence the opinion of Dr. Mantovani without his testifying, the court having already ruled that Dr. Mantovani's opinions could be put in evidence only through his testimony.

■■

Plaintiffs complain that the ruling differed from a pretrial ruling that Dr. Hecox could so testify. The pretrial ruling was ambiguous. Defense counsel said he understood the ruling to mean that Dr. Hecox could not testify to what another doctor had said. In any event, throughout the trial, the court's consistent concern was to prevent the plaintiffs from putting in the opinion of a doctor except through that doctor's testimony. The court's ruling as to Dr. Hecox during the trial was consistent with that concern. It did not abuse its discretion.

### D. Subpoena to Non-Party

By notice of deposition and subpoena duces tecum dated March 17, 1989, the plaintiffs sought to require a representative of a medical malpractice carrier, not a party to this action, to submit to a deposition on March 23, 1989, in Minneapolis, to provide information on money it had paid to two defense witnesses. After hearing arguments, the court quashed the subpoena. Plaintiffs assert the court erred.

549

The trial court may quash an unreasonable and oppressive subpoena. Section 805.07(3), Stats. Having neither a transcript of the motion hearing nor a written decision by the trial court, we cannot review the ruling for abuse of discretion. Instead, we must assume that the record supports every fact essential to sustain the trial court's exercise of discretion. *Austin v. Ford Motor Co.,* 86 Wis. 2d 628, 641, 273 N.W.2d 233, 239 (1979).

E. Nurse's Note

Plaintiffs' counsel used Jennifer's hospital record when examining a physician witness. Plaintiffs' counsel asked the witness to read from a nurse's note in the record. Defendants' counsel asked that the witness also read the "very next phrase" in the nurse's note. Plaintiffs' counsel responded, " '[N]o seizure.' The nurse thought that that was not a seizure." Defendants' counsel replied: "It says, 'no seizure activity noted.' " Plaintiffs' counsel moved to strike that reference to the nurse's note on grounds that the nurse could not make a diagnosis. The court denied the motion to strike, and we sustain the ruling. Plaintiffs' counsel himself read into the record the substance of the nurse's note, be it diagnosis or observation. If error occurred, plaintiffs' counsel caused it.

F. Interrogatories

Plaintiffs deposed Dr. Kenny, a defense expert. When asked, "Do you have an opinion concerning the cause of [Jennifer's] cerebral palsy?," Dr. Kenny responded, "Not really." The week before trial, plaintiffs served interrogatories on defense counsel. One interrogatory asked whether the defense experts had additional

opinions not testified to at deposition. The defendants refused to answer the interrogatories on grounds that they had no knowledge of the information sought.

At the trial, Dr. Kenny testified to several reasons why hypoxia could not have caused Jennifer's brain damage. On appeal, plaintiffs assert that the deposition question on cause was such that Dr. Kenny should have answered that his only opinion was that Jennifer's problems were not caused by hypoxia. They assert that such an answer would have elicited additional questions concerning the basis for that opinion. They contend that the court should have required the defendants to answer plaintiffs' interrogatories or should have prevented Dr. Kenny from testifying regarding cause. We disagree.

Dr. Kenny's answer on deposition was responsive—that he had no opinion concerning the cause of the cerebral palsy. His testimony at the trial was consistent with that response—that he had no opinion as to the cause of the cerebral palsy but it could not have been caused by hypoxia. He was never asked at the deposition whether in his opinion hypoxia caused the cerebral palsy.

G. Apgar Score Testimony

The trial court allowed Dr. Kenny to testify to a statement by Dr. Virginia Apgar on whether low "Apgar scores" were necessarily related to hypoxia. Dr. Kenny testified he remembered "hearing [Dr. Apgar] say that one of her big regrets in establishing the Apgar score was the misinterpretation that all of [the] low Apgar scores were related to asphyxia at birth." Plaintiffs contend that since the court had ruled that their expert, Dr. Hecox, could not testify to the opinions of treating physicians upon which he relied, the court should not have

allowed Dr. Kenny to testify to Dr. Apgar's statement. We agree that the rulings were inconsistent.

On the other hand, we must disregard any error "which shall not affect the substantial rights of the adverse party." Section 805.18(1), Stats. Immediately before his testimony regarding Dr. Apgar's regrets over misinterpretation of Apgar scores, Dr. Kenny testified without objection that when the Apgar score was originally published its originators recognized that there were multiple reasons for babies to have low Apgar scores and somehow it later became accepted that a low Apgar score was equal to birth asphyxia. Dr. Kenny also testified without objection that

> [I]t is a shame that we have had to reinvent and rediscover what Dr. Apgar and Dr. James said so many years ago, that there are many causes of low Apgar scores, there are many causes of brain damage in infants. And asphyxia is, as it turns out, even less important than we thought.

In view of Dr. Kenny's earlier unobjected-to testimony, his testimony to which plaintiffs objected did not affect their substantial rights.

## H. Cross-Examination of Dr. Kenny

At the beginning of Dr. Kenny's testimony for the defense, the jury heard that he is employed by St. Mary's Hospital, one of the defendants, and heads its department of neonatology. During cross-examination, plaintiffs' attorneys asked him whether he understood that his testimony that hypoxia did not cause Jennifer's brain damage would benefit the hospital as well as Dr.

Andringa, if the jury found that the hospital was negligent. Defendants objected to the question.

In the absence of the jury, plaintiffs' counsel claimed that the question related to the doctor's bias. Counsel claimed the right to show the jury that Dr. Kenny understood that part of his testimony helped the hospital. Counsel wanted to show that Dr. Kenny knew that to prevail against the hospital, plaintiffs must demonstrate obstetrical negligence and causation, and that he knew that if he ruled out causation, the hospital would benefit even if the jury found obstetrical negligence.

The trial court sustained defendants' objection to the question and ruled that plaintiffs could argue the matter to the jury. On appeal, plaintiffs claim error. We disagree. The scope of cross-examination is left to the discretion of the trial court. *Herman v. Milwaukee Children's Hosp.*, 121 Wis. 2d 531, 555, 361 N.W.2d 297, 307 (Ct. App. 1984). The bias argument could be made to the jury, no matter what Dr. Kenny's answer would have been. The court did not abuse its discretion.

I. Rebuttal Testimony

1. Rebuttal Expert

Plaintiffs assert that the court committed two errors when denying them the right to present rebuttal testimony. The first claimed error is the court's refusal to permit plaintiffs to call Dr. Alan Hill as a rebuttal expert.

About ten weeks before the trial, plaintiffs designated potential rebuttal experts, including Dr. Hill. The defendants moved to strike plaintiffs' designation of rebuttal experts. At the motion hearing, the trial court ruled that the testimony of Dr. Hill would be limited to

rebutting testimony to be given by Dr. Towbin for defendants. The court's written order incompletely described its oral ruling. The written order permitted the plaintiffs to declare Dr. Hill as a rebuttal witness, without limiting his testimony to rebutting Dr. Towbin's evidence. Defendants later withdrew Dr. Towbin as a witness.

The trial court did not err when it refused to permit plaintiffs to call Dr. Hill as a rebuttal witness. The court's ruling was made known to the parties at the hearing on the motion. The written order on the ruling was incomplete.

### 2. Rebuttal Offer of Proof.

By the time the defendants rested, the trial had lasted almost three weeks, much of which dealt with what caused Jennifer's cerebral palsy. Plaintiffs' experts had testified that hypoxia was the cause. Defendants' experts had testified that whatever the cause, it was not hypoxia. When plaintiffs announced that they intended to call rebuttal witnesses, the trial court limited their testimony to "new facts put in by the defense" and required the plaintiffs to describe by offer of proof the new facts they would rebut. Equating new "facts" with new "theories," plaintiffs offered to rebut four new facts.

After hearing the offer, the trial court said that the record was complete, the parties had exhaustively examined all the facts available and all the theories, and the only issue was whether rebuttal was necessary to achieve justice. The court concluded that it was not, and disallowed rebuttal. We review the decision to disallow rebuttal in light of the court's duty to exercise its discretion reasonably on the basis of the circumstances and

the facts of record. *Lobermeier v. General Tel. Co.,* 119 Wis. 2d 129, 143, 349 N.W.2d 466, 473 (1984). Rebuttal is appropriate only when the defense injects a new matter or new facts. *Rausch v. Buisse,* 33 Wis. 2d 154, 167, 146 N.W.2d 801, 808 (1966). The rule is flexible, and exception is generally made when rebuttal evidence is necessary to achieve justice. *Id.* If that is claimed, we look to whether the rebuttal evidence is so crucial that the trial court abused its discretion when refusing to admit it. *Id.* In a sense, the question is whether the refusal to allow a rebuttal is, at best, harmless error. *Lobermeier,* 119 Wis. 2d at 143, 349 N.W.2d at 473. We confine our review of the record to the four claimed new facts the plaintiffs described in their offer of proof.

The first new fact defendants are claimed to have raised is that a maldevelopment in the organizational stage of Jennifer's brain probably caused her cerebral palsy. The claims fails. The evidence was not new. The plaintiff's experts had testified to the developmental issue. Dr. Hecox specifically covered developmental factors and explained why, in his view, they were not causal. Dr. Menkes testified that Jennifer's brain damage was more likely caused by hypoxia than by a developmental defect. Dr. Abramson categorically ruled out a developmental defect. Nothing in the proposed rebuttal suggests that it was crucial to the plaintiffs' case.

The second new fact the defendants are said to have raised is that Jennifer had not been in a stupor or coma immediately following her birth. The defendants' experts testified that hypoxia usually entails stupor or coma. Plaintiffs said their experts would state on rebuttal that Jennifer indeed had been in a stupor or a coma. But defendants raised nothing new. The stupor or coma issue

was raised on cross-examination of plaintiffs' experts. Dr. Hecox agreed that Jennifer was not in a "deep" stupor or coma within the first twelve hours following her birth or within the twenty-four to seventy-two hour period. Dr. Abramson agreed that during her first twelve hours she was not in a deep coma or stupor. Whether she lost consciousness during her first seventy-two hours could not be determined but he thought there were periods. The plaintiffs suggest that whether stupor or coma occurred is an opinion. Assuming that is true, defendants raised the issue on cross-examination, and if the opinions of plaintiffs' experts required elaboration, redirect examination was the time. Since plaintiffs did not pursue that course, we conclude that the proposed rebuttal on this issue was not crucial to the plaintiffs' case.

The third alleged new fact is that the absence of stupor or coma conclusively rules out a hypoxic origin for Jennifer's cerebral palsy. The defense produced testimony that a child suffering from hypoxia usually exhibits certain characteristics including coma or stupor. One defense expert testified that the "most important three" factors tending to show that hypoxia did not cause brain damage to Jennifer were the absence of coma, the absence of damage to other organ systems, and the absence of metabolic acidosis. In that expert's view, the absence of coma is the most important. But no defense witness testified that the absence conclusively ruled out a hypoxic origin for Jennifer's neurological problems. For that reason, the proposed rebuttal was not crucial to the plaintiffs' case.

The fourth new fact pertains to damage to organs in addition to the brain. The defendants' experts testified that Jennifer's other organs or organ systems had suffered no damage. One expert testified that it is extremely

unlikely that Jennifer's brain damage, if caused by hypoxia, would have happened without other organ involvement, and a ninety-five percent chance exists that such other involvement would occur. Another expert testified that had she suffered a hypoxic insult, she would have had multi-organ failure. The plaintiffs assert that the facts regarding other organ damage were raised only by the defendants. We disagree. Dr. Menkes testified to the "absence of any other anomalies affecting any other organ system."

Plaintiffs asserted in their offer of proof that Dr. Menkes meant that there was no *permanent* damage to other organs. Plaintiffs' expert would testify on rebuttal that while in some hypoxia cases injury to other organ systems occurs, those injuries are primarily transient, and in Jennifer's case those systems were transiently affected and only her central nervous system was permanently damaged. The expert would testify that in only fifty-three percent of the cases in which hypoxic insult occurs, more than one organ system is involved.

We conclude that the trial court did not abuse its discretion by refusing to allow rebuttal on the multiple-organ issue. Throughout the trial, plaintiffs' theory was that hypoxia caused Jennifer's brain damage. Their proposed rebuttal evidence that three of her organ systems in addition to her brain were affected supports that theory, but that evidence belonged in their case-in-chief. Plaintiffs generally should put in their whole case before resting. *Brockman v. Wisconsin Power & Light Co.*, 197 Wis. 374, 381, 222 N.W. 239, 241 (1928). This was not an instance of rebutting evidence, but proving a case.

The proposed rebuttal evidence showing that fifty-three percent of hypoxia cases involve more than one organ system was not crucial to the plaintiffs' case. The

evidence favors the defendants. It shows that if Jennifer suffered a hypoxic insult, more likely than not she would have had multiple organ involvement. That was the defendants' position. The trial court did not abuse its discretion by refusing to allow rebuttal.

*By the Court.*—Judgment affirmed. No costs to any party.