Mollie Place, Plaintiff-Appellant,
v.
City of Milwaukee, Patricia Schnell, and Medicare Part B, Defendants-Respondents.
Allstate Insurance Company, Plaintiff,
v.
Patricia A. Schnell and City of Milwaukee, Defendants-Respondents.
No. 03-3450.
Court of Appeals of Wisconsin.
Opinion Filed: September 8, 2004.
Before Wedemeyer, P.J., Fine and Curley, JJ.
¶1 PER CURIAM.
Mollie Place appeals from a judgment entered on a jury verdict dismissing her negligence claim against the City of Milwaukee and Patricia Schnell, a City of Milwaukee police officer.[1] Place sued the defendants after Place and Schnell were involved in a car accident. A jury awarded Place $33,417 in damages, but found that Place was sixty percent negligent. See WIS. STAT. § 895.045(1) (a plaintiff's negligence cannot be greater than the person against whom recovery is sought). Place claims that this case should be remanded for a new trial because: (1) the assistant city attorney allegedly made an improper remark during closing arguments; (2) there is insufficient evidence to support the jury's apportionment of negligence; and (3) the jury's award of damages was "so low as to shock the conscience." We affirm.

I.
¶2 Mollie Place was injured in a car accident on February 10, 2000, when her car hit a squad car at the intersection of Center and Eighth Streets in the City of Milwaukee. Place sued Schnell and the City, alleging that Schnell negligently caused the accident because she drove the squad car into the intersection against a red light without her siren on.[2]See WIS. STAT. § 346.03(2)(b) (applicability of the rules of the road to emergency vehicles). The City denied that Schnell was negligent, and contended that Place negligently caused the accident because she failed to maintain a proper lookout and yield the right of way to an emergency vehicle. See WIS. STAT. § 346.19 (what to do on approach of an emergency vehicle). The case went to trial.
¶3 At the trial, Place testified that on February 10, 2000, she was driving south on Eighth Street, a one-way street, to go to the grocery store. She was driving in the center lane and, when she got to the intersection of Center and Eighth Streets, the traffic light facing her had just turned green. According to Place, a van was stopped in the left lane of Eighth Street, and a city bus was stopped in the right lane of Eighth Street to pick up passengers. Place claimed that she looked both ways and, after she did not see any cars, drove into the intersection. Place testified that she saw the squad car when she got to the middle of the intersection. According to Place, she "hit [her] brakes" and "slid" into the squad car. Place told the jury that she did not hear a police siren or see flashing lights before the accident.
¶4 The passenger in Place's car and an eyewitness also testified. Ileana Schenk was sitting in the passenger seat of Place's car when the accident happened. According to Schenk, when Place drove up to the intersection, the traffic light was green and a "full-sized van" was in the left lane and a bus was in the right lane of Eighth Street. Schenk testified that, as Place started to pull out into the intersection, Schenk saw the squad car and told Place: "Mollie, police." According to Schenk, Place "slammed on the breaks" and "slid" into the squad car. Schenk testified that she did not hear a siren or see flashing lights before the accident.
¶5 Ronald Sellers testified that he saw the accident while he was waiting for a bus at the corner of Center and Eighth Streets. According to Sellers, he saw the squad car driving down Center Street with its flashing lights on, but did not hear a siren.
¶6 Schnell testified in her defense. She claimed that on February 10, 2000, she was driving west on Center Street in response to a dispatch indicating that a man had a gun and was threatening his ex-girlfriend and her children. Schnell told the jury that she turned on the squad car's lights and siren when she got the dispatch. Schnell estimated that she was two or three blocks away from the intersection when she turned the lights and siren on. When she got to the intersection of Center and Eighth Streets, the traffic light facing her was red. Schnell testified that she stopped the squad car at the light and looked right onto Eighth Street. She claimed that she saw a car in the right lane slow down and stop, and a car in the left lane slow down and stop, but she did not see a car in the center lane. According to Schnell, after she was certain that the cars had stopped, she turned off her siren and drove into the intersection. Schnell claimed that she turned off her siren because "[w]e were within a block of the call that we were dispatched to, and because ... it was a violent and volatile situation, I thought it was best to turn the siren off, so we did not announce our arrival at the residence." Schnell testified that she was in the middle of the intersection when Place hit the squad car.
¶7 During closing arguments, Place's attorney argued that Schnell was negligent because she did not have her siren on when she went through the intersection. To support this argument, he pointed to Sellers's testimony that he did not hear a siren. In response, the assistant city attorney told the jury that she could not explain Sellers's testimony and Place's lawyer objected:
[ASSISTANT CITY] ATTORNEY: The investigating officer ... asked Officer Schnell about the point of impact, was her siren on at the time of the accident? She told him no.
The citizen witness, I can't explain. Milwaukee just had a situation with eye witnesses that could not be explained 
[PLACE'S] ATTORNEY: Objection.
After the objection, the trial court asked the assistant city attorney to explain and the assistant city attorney clarified her comment:
THE COURT: I'm not following you. Can you repeat what you're saying.
[ASSISTANT CITY] ATTORNEY: Okay, I'll start over.
THE COURT: I'm not sure I understand the comment.
[ASSISTANT CITY] ATTORNEY: The citizen witness perhaps was at a different corner. I don't know why the citizen witness did not hear the siren that the officer testified was on.
The assistant city attorney continued her closing argument and Place's lawyer did not make any further objections or ask the trial court to instruct the jury about what the assistant city attorney had said.
¶8 As we have seen, the jury awarded Place $33,417 in damages. It found, however, that Place was sixty percent negligent and Schnell was forty percent negligent. On motions after the verdict, Place claimed that she was entitled to a new trial because the assistant city attorney's comment about the eyewitness during closing arguments was racially prejudicial, and because the jury's apportionment of negligence was not supported by the evidence. The trial court denied the motions.

II.

A. Closing Arguments
¶9 Place argues that the assistant city attorney "prejudicially injected race into the trial" when, during closing arguments, the lawyer referred to an unrelated "situation" that had occurred in Milwaukee. According to Place, the "situation" involved the credibility of a white police officer, an African-American victim, and an African-American witness. Place claims that the assistant city attorney referred to this "situation" to imply that African-American "witnesses lie about white police officers," noting that Place and Sellers are African-American and Schnell is white. Place has, however, waived this issue as an appellate argument.
¶10 The Wisconsin Supreme Court has long held that review on appeal of "an allegedly improper closing argument" cannot be had "as a matter of right" if "the objecting party did not move for a mistrial on the basis of the claimed impropriety before the jury returned its verdict." Peot v. Ferraro, 83 Wis. 2d 727, 741742, 266 N.W.2d 586, 593 (1978) (collecting cases). "The rationale for requiring a timely motion for a new trial is to prevent counsel from gambling on a jury verdict in its favor before seeking a new trial." Chart v. General Motors Corp., 80 Wis. 2d 91, 108, 258 N.W.2d 680, 687 (1977). Place did not move for a mistrial based on the assistant city attorney's closing argument. Although we can, as a matter of discretion, review the alleged error irrespective of the waiver, see Pophal v. Siverhus, 168 Wis. 2d 533, 545, 484 N.W.2d 555, 559 (Ct. App. 1992), we see no reason to relieve her of that waiver because: (1) the assistant city attorney's comment was both fleeting and immediately clarified to, in essence, withdraw the reference to the other incident; and (2) Place never asked the trial court to give the jury a curative instruction that might have eliminated any inference, irrespective of how remote, the jury might have drawn improperly from the few words the assistant city attorney said before she was stopped and, at the trial court's direction, rephrased that part of the argument.
¶11 Place also contends that Pophal preserves her claim of error even though she did not move for a mistrial. We disagree. Pophal quoted Lobermeier v. General Telephone Co., 119 Wis. 2d 129, 349 N.W.2d 466 (1984), for its clarification of the mistrial/waiver rule:
[I]f a litigant has raised a claim of error of so serious a nature that it may warrant a mistrial, the litigant must not only claim error but must demand the mistrial, for to fail to demand a mistrial is tantamount to an acknowledgement that the error is harmless, or at least it is not prejudicial to the degree that the aggrieved party is not willing to proceed on the assumption, or hope, there will be a favorable verdict despite the error.
Pophal, 168 Wis. 2d at 543, 484 N.W.2d at 558 (quoting Lobermeier, 119 Wis. 2d at 136, 349 N.W.2d at 470; emphasis by Pophal). We interpreted Lobermeier to mean that "a motion for a mistrial is necessary only if error has occurred of so serious a nature that it warrants a mistrial, and then only as to that error." Pophal, 168 Wis. 2d at 544, 484 N.W.2d at 558 (footnote omitted). We also noted that the mistrial/waiver rule seemed inconsistent with Wisconsin's rules of evidence. Id., 168 Wis. 2d at 543 n.1, 484 N.W.2d at 558 n.1. We thus concluded that the plaintiffs in Pophal could raise their arguments on appeal as a matter of right, even though they did not move for a mistrial, because they raised mostly evidentiary issues, none of which were so serious as to warrant a mistrial. Id., 168 Wis. 2d at 544545, 484 N.W.2d at 559; see State v. Hartman, 145 Wis. 2d 1, 9, 426 N.W.2d 320, 323 (1988) (An objection to the admissibility of evidence preserves the issue for appeal if it is made "promptly and in terms which inform the circuit court of the exact grounds upon which the objection is based.").
¶12 Place here, however, does not seek to raise an evidentiary issue on appeal. Rather, as we have seen, she challenges a statement made during closing arguments. Accordingly, the mistrial/waiver rule applies, and for the reasons already noted, we decline to consider her argument that the assistant city attorney's comments deprived her of a fair trial.

B. Apportionment of Negligence
¶13 Place claims that the jury's apportionment of negligencesixty percent to Place and forty percent to Schnellis against the great weight of the evidence and contrary to the law. She points out that WIS. STAT. § 346.03(2)(b) requires a person driving an emergency vehicle to use both a visual signal, such as flashing lights, and an audible signal, such as a siren, before entering an intersection against a red light.[3] Place thus argues that the apportionment of negligence was improper because it failed to fully account for Schnell's negligence when she entered the intersection against a red light without her siren on. We disagree.
¶14 "The apportionment of negligence is peculiarly within the province of the jury and only in an unusual case will the court upset a jury's apportionment." Jagmin v. Simonds Abrasive Co., 61 Wis. 2d 60, 83, 211 N.W.2d 810, 822 (1973). We will uphold the jury's verdict if there is any credible evidence on which it could have based its decision, particularly where the verdict has the approval of the trial court. See Roach v. Keane, 73 Wis. 2d 524, 536, 243 N.W.2d 508, 515 (1976).
¶15 In this case, on motions after the verdict, the trial court determined that the jury's verdict was not contrary to the law:
I think that the jury, by finding both sides negligent, they did find that there was [sic] actions taken by the driver which were negligent, and I would imagine that that's what they are referring to, is that her testimony was that she came to the intersection and then turned off the siren and entered the intersection, which is contrary to the dictates of 346.03 sub (2b), and for that they found her negligent, and they found a determination that she was, on balance, 40 percent negligent.
I don't see that that can be contrary to law.
It also determined that the evidence was sufficient to support the jury's apportionment of negligence:
They're both negligent, and the weight that the jury gives to their respective negligence is a weight issue. It's not a matter of law[.] ... You think it should be ten percent this way. People on the jury  other people might have thought it should have been ten percent the other way, but the jury came down on one line, and there is credible evidence to support it, and there's no basis for this Court to disrupt that.
We agree.
¶16 This case involved comparing Schnell's negligence in entering the intersection without her siren on against Place's negligence in failing to maintain a proper lookout. When viewing the evidence in a light most favorable to the verdict, we cannot conclude that Schnell's negligence equaled or exceeded Place's negligence as a matter of law. See Morden v. Continental AG, 2000 WI 51, ¶39, 235 Wis. 2d 325, 611 N.W.2d 659 (we consider the evidence in a light most favorable to the jury's determination). Schnell testified that she had her siren on as she drove up to the intersection. She also testified that the other cars on Eighth Street were stopped. Under our standard of review, the jury was entitled to credit that testimony. Further, Place was eighty-one years old at the time of the accident. The trial record shows that, at times, she was unresponsive to questions, indicating a possible hearing disability. This evidence supports a finding that Place failed to maintain a proper lookout when she entered the intersection.

C. Damages
¶17 Place argues that, if we grant her a new trial on the issue of liability, we should also grant her a new trial on the issue of damages because the jury's damage award was "so low as to shock the conscience." Because we affirm the verdict on liability and recovery is precluded by Place's sixty percent negligence, we do not address Place's argument that the damages were too low. WIS. STAT. § 895.045(1); Gross v. Hoffman, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).
By the Court.  Judgment affirmed.
NOTES
[1] Medicare Part B was named as a subrogated party. See WIS. STAT. RULE 803.03(2) (200102). All references to the Wisconsin Statutes are to the 200102 version unless otherwise noted.
[2] Place's insurer, Allstate Insurance Company, filed a separate lawsuit against Schnell and the City to collect payments it made to Place for property damage and bodily injuries. The cases were consolidated for trial. Allstate is not participating in the appeal.
[3] WISCONSIN STAT. § 346.03 provides, as relevant:

Applicability of rules of the road to authorized emergency vehicles.
....
(2) The operator of an authorized emergency vehicle may:
....
(b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation.
....
(3) The exemption granted the operator of an authorized emergency vehicle by sub. (2) (a) applies only when the operator of the vehicle is giving visual signal by means of at least one flashing, oscillating or rotating red light except that the visual signal given by a police vehicle may be by means of a blue light and a red light which are flashing, oscillating or rotating[.] ... The exemptions granted by sub. (2) (b) ... apply only when the operator of the emergency vehicle is giving both such visual signal and also an audible signal by means of a siren or exhaust whistle.