PER CURIAM.
¶ 1 James Wiese and Premier Sales & Leasing of Waukesha Inc. ("Wiese," "Premier," or "defendants") appeal a judgment awarding Daniel Greene $223,474.42 upon his breach-of-contract claim and attorney's fees under WIS. STAT. § 134.93 (2015-16).[1] Defendants assert numerous points of error. None persuade us. We affirm.
¶ 2 Wiese owns Premier. In late 2006, Greene and Premier, through Wiese, entered into an oral agreement for acquiring and selling used automobiles. The agreement defined how the parties would split commissions and profits under different scenarios. As is common in the business, Greene and Wiese tracked transactions via each vehicle's "deal jacket." Deal jacket information includes the contract between the seller and Greene or Premier; identity of the seller; vehicle acquisition price; a copy of the title; copies of checks; costs of inspection, repair, or refurbishing; sale price and buyer's name; and amount of profit.
¶ 3 Greene also kept a ledger in which he logged his transactions and his draws from and personal loans to the Premier checking account, on which he had signing privileges. Within the first year, he suspected that he was not getting his agreed-upon share of the profits. He approached Wiese several times about meeting to reconcile matters; Wiese agreed but continually deferred the discussion. Green acknowledged at trial that he could have withdrawn the money from the account himself, but thought it wiser that Premier have a healthy checking account so as to purchase more, or better, cars.
¶ 4 Ongoing disagreement about the terms of their arrangement ended the parties' dealings in early 2013. In 2015, Greene filed suit, alleging breach of contract and a violation of WIS. STAT. § 134.93, regarding payment of commissions; breach of fiduciary duty; conversion; misrepresentation: intentional deceit; civil conspiracy injury to business; and theft. Invoking § 134.93(5), he demanded double damages, actual attorney's fees, and costs and disbursements.
¶ 5 The matter was tried to the court over three days. After Greene's case-in-chief, defendants presented their case and rested. Greene's counsel then requested to put Greene back on the stand to offer rebuttal testimony. Defendants objected, to no avail. Greene's testimony included new exhibits.
¶ 6 The trial court dismissed all but the breach-of-contract claim, which it deemed "clearly" proved. With regard to WIS. STAT. § 134.93, the court said it was satisfied that Greene was an "independent contractor," but, with the disputed commissions still so unclear, it could not determine which party was "right" and thus provisionally tabled the issue of additional damages. It ordered the parties to address that issue and to submit recalculations of their damages. Defendants then moved pursuant to WIS. STAT. § 805.17(3) to dismiss Greene's complaint for failure to accurately establish his damages at trial. The court denied the motion because there "clearly" were damages. Wiese subsequently moved for reconsideration of the trial ruling.
¶ 7 Besides their written submissions, the parties presented additional arguments at the damages hearing. Tacitly denying defendants' motion to reconsider, the court accepted Greene's recalculated damages of $223,474.42 as the amount of his unpaid commissions under the contract, ordered joint and several between Wiese and Premier, and awarded Greene costs and attorney's fees under WIS. STAT. § 134.93(5). Defendants again filed a motion to reconsider the ruling; the motion was denied. This appeal followed.
¶ 8 A breach-of-contract claim requires proof of: (1) "a contract between the plaintiff and the defendant"; (2) "failure of the defendant to do what it undertook to do"; and (3) damages. See Brew City Redevelopment Grp., LLC v. Ferchill Grp. , 2006 WI App 39, ¶ 11, 289 Wis. 2d 795, 714 N.W.2d 582. Defendants argue that the trial court improperly denied their motion to dismiss at the end of Greene's case for failure to prove damages. Dismissal is proper when a plaintiff fails to show any right to relief. WIS. STAT. § 805.17(1). Defendants must show that Greene failed to make a prima facie case. See Household Utils., Inc. v. Andrews Co. , 71 Wis. 2d 17, 24, 236 N.W.2d 663 (1976).
¶ 9 Defendants make two arguments to support their claim. They first contend the motion should have been granted because Greene failed to prove the amount of his damages. They later contend the court shifted the burden of proof by ordering both parties to recalculate the transactions to determine if there were damages when that proof was the sole responsibility of Greene in his case-in-chief. Neither formulation works.
¶ 10 We take the burden-shifting argument first. The record amply confirms that recalculation was not ordered to ascertain if Greene incurred damages, but how much they were. Further, the defense always has a choice: rebut the plaintiff's prima facie case or accept it. Wiese refused to meet Greene for a reconciliation of their financial matters when they were business associates or after the suit was filed, failed to file a counterclaim addressing their affirmative defense that a "true accounting" would reveal that Greene actually owed them money, and persisted in that "do-nothing" approach at trial. The court expressed its exasperation that Wiese objected to and contradicted Greene's claimed damages but never offered an alternative calculation. Ordering the parties to recalculate was not erroneous burden-shifting.
¶ 11 Defendants' first point addressing the amount of damages also misses the mark. " 'There is a clear distinction between the measure of proof necessary to establish the fact that the plaintiff has sustained some damage and the measure of proof necessary to enable the [trier of fact] to fix the amount.' " Essock v. Mawhinney , 3 Wis. 2d 258, 269-70, 88 N.W.2d 659 (1958) (citation omitted). Where, as here, the fact of damages is clear and certain, mere uncertainty as to the amount will not preclude recovery. Cutler Cranberry Co. v. Oakdale Elec. Coop. , 78 Wis. 2d 222, 234-235, 254 N.W.2d 234 (1977). Greene proved all three elements of his breach-of-contract claim.
¶ 12 Defendants next contend the trial court improperly allowed Greene to present rebuttal evidence after they had rested. The scope of rebuttal testimony is within the trial court's discretion, which must be exercised "reasonably on the basis of the circumstances and the facts of record." Pophal v. Siverhus , 168 Wis. 2d 533, 554-55, 484 N.W.2d 555 (Ct. App. 1992). Rebuttal evidence is appropriate "when the defense injects a new matter or new facts." Id. at 555.
¶ 13 Wiese testified earlier that day with respect to exhibit 56, a listing of his average monthly overhead expenses. Greene had not seen the exhibit before Wiese's testimony as the parties had conducted little discovery in an effort to keep costs down. The court concluded that the exhibit was "new" and that, due to the minimal discovery, Greene could not have anticipated Wiese's testimony. The court disagreed with Wiese that it was "giving [Greene] another chance," stating, "Well [he] put in a claim for this amount and you contested it, and now [he] can put in rebuttal. That is the nature of rebuttal, Counsel."
¶ 14 The court's finding of new evidence is not clearly erroneous and its reasoning is sound. We reject defendants' assertion that the trial court allowed Greene to present rebuttal testimony only to give him a second kick at the cat. The rebuttal rule exists because the plaintiff bears the burden of proof. In any event, defendants do not tell us why the rebuttal testimony was problematic or prejudicial. They had the opportunity to challenge it in their posttrial brief and by argument at the damages hearing. Defendants have not shown an erroneous exercise of discretion.
¶ 15 We likewise reject defendants' contention that, once the evidence was closed, the court improperly ordered the parties to present additional information "not currently in evidence," specifically the deal jackets, which "were not offered as exhibits and were not entered into evidence." The still-disputed damages amount was unclear due to the long-unreconciled records and, in part, to the lack of a written contract. Describing the proofs from both sides as a "mess ... literally foisted on this Court to try and sort it out," the court stated, "I can't look at 2,000 deal jackets. A jury wouldn't have looked at 2,000 deal jackets. They have to be condensed into something that looks like a reconciliation and a record." The court thus decided "to put counsel to work." It ordered the parties to submit new calculations-not new evidence-of their commissions and profits from all of the transactions and to support the calculations by doing "better math" and "show[ing] me your work."
¶ 16 While all 2000 deal jackets were not made exhibits, a number of them repeatedly were referred to and formed the basis for a compilation of various summary exhibits. See WIS. STAT. § 910.06. We agree with the trial court that they were received into evidence. In light of its decision, the court's approach in ordering a recalculation of profits and commissions was appropriate and sensible.
¶ 17 Defendants argue that the damage award nonetheless cannot stand. Directing us to WIS. STAT. § 805.17(2), they argue that "Wisconsin law requires that a trial court make a determination of findings of fact and conclusions of law at the close of evidence or within 60 days of the close of evidence." Not quite. The referenced part of § 805.17(2) actually reads: "The findings and conclusions or memorandum of decision shall be made as soon as practicable and in no event more than 60 days after the cause has been submitted in final form." Thus, although the damages hearing was on May 16, 2017, seventy-four days after the evidence closed on the last day of trial, we disagree with defendants' position.
¶ 18 The parties were given until April 28, 2017, by which to submit their recalculations. Both parties filed them on April 28. Greene logically contends that is the date that "the cause [was] submitted in final form." The damages hearing was held eighteen days later. We conclude it was timely commenced.
¶ 19 Even if the court's findings and conclusions were rendered beyond the sixty-day limit, a similar contention was summarily rejected in Schaefer v. Dudarenke , 89 Wis. 2d 483, 495, 278 N.W.2d 844 (1979). Schaefer cited Merkley v. Schramm , 31 Wis. 2d 134, 138, 142 N.W.2d 173 (1966), for the proposition that the mandatory language of the predecessor statute, WIS. STAT. § 270.33 (1965), was "only directive." Schaefer , 89 Wis. 2d at 495 n.2. In a general revision of the rules of civil procedure, former § 270.33 was renumbered to WIS. STAT. § 805.17(2) and the sixty-day-requirement language was somewhat changed.[2] The supreme court adopted the revised rules on February 17, 1975, which became effective January 1, 1976. See S. CT. ORDER , 67 Wis. 2d 585, vi, 585, 712-13 (1975). When the supreme court decided Schaefer just three years later, its citation to Merkley suggests it did not believe that the change in language made the sixty-day limitation mandatory.
¶ 20 We also note that the court was prepared to receive the recalculation briefs within thirty days of March 3, the last day of trial. It was defendants' counsel who, due to a long-scheduled health matter, lobbied for even more time beyond the April 28 date that was granted. They will not be heard to complain that the court did not comply with a deadline.
¶ 21 Defendants next contend the evidence does not support the trial court's damages ruling. When reviewing the sufficiency of the evidence, we use a highly deferential standard of review. Jacobson v. American Tool Cos. , 222 Wis. 2d 384, 389, 588 N.W.2d 67 (Ct. App. 1998). We do not set aside the trial court's findings of fact unless clearly erroneous. WIS. STAT. § 805.17(2). "[W]e are not to weigh conflicting evidence to determine which should be believed. Rather, if there is credible evidence to sustain the findings, irrespective of whether there is evidence that might lead to the opposite conclusion, we must affirm." Jacobson , 222 Wis. 2d at 390. We accept the court's credibility determinations. Id.
¶ 22 Defendants continue to pick apart individual pieces of evidence Greene presented at trial-for example, various ledger errors and inconsistencies, a discrepancy between a 2013 IRS 1099 form and what Greene claimed as profit that year, and transactions allegedly miscategorized so as to yield larger profits for Greene. Greene's posttrial submission addressed the errors or miscalculations defendants and the court identified, leading to recalculated damages of $223,474.42, a significant reduction from his initial $360,000 claim.
¶ 23 Some evidence might shore up defendants' assertions. The court found that the weight of the credible evidence favored Greene's recalculated damages, however, and there is credible evidence to sustain the court's findings. Therefore, we must affirm. See id.
¶ 24 Defendants next assert that the trial court erred in not dismissing the breach-of-contract claim against Wiese personally. They present no citations to the record, though, to point out why this is error. This is a violation of WIS. STAT. RULE 809.19(1)(d) and (e). Grothe v. Valley Coatings, Inc. , 2000 WI App 240, ¶ 6, 239 Wis. 2d 406, 620 N.W.2d 463. It is not our duty to search the record, unguided by references to specific testimony, to look for evidence to support their argument. Id. To paraphrase Judge Richard Posner, "Judges are not like pigs, hunting for truffles buried in [the record]." See United States v. Dunkel , 927 F.2d 955, 956 (7th Cir. 1991) (per curiam).
¶ 25 Further, defendants first raised this in their posttrial submission, which the court had limited to addressing recalculated commissions and WIS. STAT. § 134.93. Failing to raise Wiese's personal liability at trial deprived both the court and Greene of the opportunity to address it in a forum where facts and a record could be developed, and constitutes forfeiture for purposes of an appeal. See Allen v. Allen , 78 Wis. 2d 263, 270, 254 N.W.2d 244 (1977).
¶ 26 Finally, defendants challenge the court's application of WIS. STAT. § 134.93. The statute defines "commission," "independent sales representative" and "principal" and prescribes when commissions are due. Sec. 134.93(1)(a), (b), (c), (2), and (4). Subsection (5) sets forth a penalty for failure to pay commissions:
(5) CIVIL LIABILITY . Any principal that violates sub. (2) by failing to pay a commission due to an independent sales representative as required under sub. (2) is liable to the independent sales representative for the amount of the commission due and for exemplary damages of not more than 200 percent of the amount of the commissions due. In addition, the principal shall pay to the independent sales representative, notwithstanding the limitations specified in [ WIS. STAT. §] 799.25 or 814.04, all actual costs, including reasonable actual attorney fees, incurred by the independent sales representative in bringing an action, obtaining a judgment and collecting on a judgment under this subsection.
¶ 27 Defendants argue that Greene presented no evidence that he was an independent sales representative or that Premier or Wiese was a principal under the statute. They assert there is a "better argument" that Greene was the principal and Wiese the sales representative. They also contend the trial court provided no analysis as to why WIS. STAT. § 134.93 applied, conflated the terms "independent contractor" and "independent sales representative," and intimated in its written decision denying their motion for reconsideration of the damages decision that Greene and Premier had an employee-employer relationship.
¶ 28 We disagree that there was no evidence of the parties' roles. Wiese himself testified at deposition and/or trial that he is the sole employee of Premier and that Greene was not Premier's employee, but an independent contractor. Greene also testified that he was an independent contractor and not an employee of Premier.
¶ 29 In addition, Wiese's CPA testified that he was aware of Premier's and Greene's business relationship and that the "commissions" line on statements attached to Wiese's income tax returns indicated payments to independent contractors-specifically to Greene-for completing car sales. The CPA also testified about the hallmarks of an independent contractor, such as the person directs his or her own work, can suffer a loss, works for different people, carries his or her own insurance, uses his or her own money to purchase materials needed to do the work, and has deductions taken out for FICA, Federal and State tax and Medicare. Except for the insurance, virtually all apply to Greene.
¶ 30 To defendants' next point, if there is a "better argument" for who was in what role, they fail to make it. They assert only that Greene more aptly should be deemed the principal, as it was his task to find and acquire the used cars, and Wiese should be viewed as the sales representative, because he "did a lot of the sales." We need not address this undeveloped argument further. See Shannon v. Shannon , 150 Wis. 2d 434, 446, 442 N.W.2d 25 (1989).
¶ 31 Finally, defendants' contention that the court provided no analysis as to why WIS. STAT. § 134.93 applied is flat-out wrong. The court stated:
Now in terms of ... the claim under [ WIS. STAT. §] 134.93 as to the nature of the relationship between these two gentlemen, whether it was an employee-employer relationship or if it was, in fact, a relationship as defined under the statute. And [to] that end I have reviewed both briefs and reviewed the brief of the plaintiff that included the definitions under 134.93, what commission means, what independent sales representative means, what principal means, the requirements as far as the product and so on, and when commissions are due and commissions due upon termination of the contract and so on.
.... I am satisfied by comparing the workings of this contract between these two gentlemen for multiple years that we have a 134.93 relationship, plain and simple. It fits every criteria, it falls on all squares, and that's what it was, plain and simple.
And the fact that health insurance was provided and now paid for by the independent sales representative, that job is going to be deducted from the unpaid commissions doesn't change that. No case law was presented to say, hey, if you get health insurance there you are no longer an independent contractor. I haven't seen that, and that would be the only thing that would cause me to pause and hesitate. And I don't have that.
The court ordered Wiese to pay Greene's costs and attorney's fees but declined to order punitive damages under § 134.93(5) as it could not find bad faith.
¶ 32 The court's ruling is not undermined because it occasionally used the term "independent contractor." Virtually everyone did and no one asserted confusion. Likewise, we are not bothered by the court's use of the word "employment" when it wrote that, even after the damages hearing, Wiese "continues to refuse to do a reconciliation of the financial matters related to [Greene's] employment with him." We construe "employment" as nothing more than shorthand for "business arrangement" or the more cumbersome "independent sales representative/principal relationship," not a finding of fact.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Wisconsin Stat. § 270.33 (1965) provided that the trial court's decision "shall be given in writing and filed with the clerk within 60 days after submission of the cause...." Wisconsin Stat. § 805.17(2) provides that the court's findings and conclusions or "decision shall be made as soon as practicable and in no event more than 60 days after the cause has been submitted in final form." (Emphasis added in both statutes.)